**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

LAUREN PEOPLES, for herself and on behalf
of those similarly situated,

      Plaintiff,

                                    Case No.:  2:22-cv-14345-DMM

vs.

TURTLEFTPIERCE, LLC, a Florida Limited
Liability Company, d/b/a THIRSTY TURTLE
SEAGRILL, PANHANDLERS, INC., a Florida
Profit Corporation, d/b/a THIRSTY TURTLE
SEAGRILL, TURTLE SPORT, INC., a Florida
Profit Corporation, d/b/a THIRSTY TURTLE
SEAGRILL, TURTLE PARTNERS, LLC, a
Florida Limited Liability Company, d/b/a
THIRSTY TURTLE SEAGRILL.

      Defendants.

_____/

**PLAINTIFF'S MOTION FOR NOTICE AND CONDITIONAL CERTIFICATION**
**AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, LAUREN PEOPLES ("Plaintiff" or "Peoples"), for herself and on behalf of those similarly situated, requests the entry of an Order for conditionally certifying this action as a collective action, and permitting, under supervision, notice to all Servers and Bartenders who worked for Defendants, TURTLEFTPIERCE, LLC, d/b/a THIRSTY TURTLE SEAGRILL, PANHANDLERS, INC. d/b/a THIRSTY TURTLE SEAGRILL, TURTLE SPORT, INC., d/b/a THIRSTY TURTLE SEAGRILL, and TURTLE PARTNERS, LLC, d/b/a THIRSTY TURTLE SEAGRILL (collectively "Defendant" or "Thirsty Turtle"), at any time within the three (3) years preceding the date notice is sent. Each putative class member was subject to common unlawful policies and practices, including:

    a.      Plaintiff and other Servers and Bartenders were required to share tips with managers; and

    b.      Plaintiff and other Servers and Bartenders were not paid overtime premiums on all overtime hours worked.

Either one of these common policies and practices, standing alone, would merit notice to the putative collective. Because all Servers and Bartenders who worked for Thirsty Turtle were subject to these policies and practices, the putative collective is appropriately defined as:

> **All "Servers and Bartenders" who worked for Thirsty Turtle, at any time from [three years prior to the date of the Court's Order granting notice] to the present.**

Through the policies and practices described herein, Thirsty Turtle denied proper minimum wage and overtime compensation to all of its Servers and Bartenders. Accordingly, Plaintiff requests conditional certification in the instant matter and further requests that the Court permit her to send to the putative collective the Notice, Reminder Notice, and Consent to Join forms attached to this Motion as **Exhibits A**, **B**, and **C**, respectively.

**MOTION FOR AN ORDER PERMITTING COURT SUPERVISED**
<u>**NOTICE TO EMPLOYEES OF THEIR OPT-IN RIGHTS**</u>

1.      Section 216(b) of the Fair Labor Standards Act of 1938 ("FLSA") provides, among other things, that an action to recover unpaid minimum wages and/or unpaid overtime compensation may be maintained against any employer in any federal or state court of competent jurisdiction by any one or more employees for and on behalf of herself and other employees similarly situated. *See* 29 U.S.C. § 216(b).

2.      Peoples was a Server and Bartender employed at Defendant's restaurant. *See* Amended Complaint and Demand for Jury Trial, D.E. 30 at ¶¶28; Declaration of Lauren Peoples ("Peoples Dec."), attached as **Exhibit D,** at ¶¶2.

3.      Thirsty Turtle paid Plaintiff and its other Servers and Bartenders the tipped minimum wage, but required these employees to share a portion of their tips, in an amount equal to a percentage of their sales, with their managers. *See* D.E. 30 at ¶¶30-34; Peoples Dec., **Exh. D,** at ¶¶4-6; Declaration of Hayleigh Bartlett ("Bartlett Dec."), attached as **Exhibit E,** at ¶¶4-7.

4.      Further, Thirsty Turtle maintained a policy and practice of paying Servers and Bartenders overtime premiums only for hours over eighty (80) in a two week period, rather than for hours over forty (40) each workweek. D.E. 30 at ¶¶49-52; Peoples Dec., **Exh. D,** at ¶8; Bartlett Dec., **Exh. E,** at ¶8.

5.      Plaintiff and other servers/bartenders shared common job duties: to attend to Thirsty Turtle's patrons, taking orders and providing food and beverage. *See* D.E. 30 at ¶29; Peoples Dec., **Exh. D,** at ¶¶3; Bartlett Dec., **Exh. E,** at ¶3.

6.      Plaintiff's claims are typical of the claims of other former and current similarly situated Servers and Bartenders employed by Thirsty Turtle, who make up the putative collective. *See, generally* **D.E. 30, Exhs. D-E**. Plaintiff estimates Thirsty Turtle employed at least 40 such

Servers and Bartenders during the three year statutory period, and that many would join if provided notice of the suit. Peoples Dec., **Exh. D**, at ¶¶9-10.

7.      All of the putative collective members were subject to the unlawful practices described above, and as a result of such unlawful compensation practices, each did not receive full and proper payment of minimum and/or overtime wages while working for Thirsty Turtle.

8.      Simply put, all other Servers and Bartenders are owed full and proper payment of their wages as guaranteed by the FLSA, and have the right to participate in this litigation. Thirsty Turtle has acted or refused to act on common grounds applicable to all these putative collective members, thereby making the identical relief appropriate with respect to the group as a whole. And, although the putative collective is identified and certain, the individual collective members cannot be identified and notified of their right to join the action absent access to Thirsty Turtle's records.

WHEREFORE, Plaintiff respectfully requests that the Court permit and supervise notice by mail and email to the putative collective in this matter.

## MEMORANDUM OF LAW

### I.  INTRODUCTION

The FLSA authorizes employees to bring an action on behalf of themselves and others similarly situated. *See* 29 U.S.C. § 216(b). The FLSA provides, in part, that:

> An action to recover the liability [for unpaid overtime] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other similarly situated. **No employee shall be a party Plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.**

*See id.* (emphasis added).

As described on its website, https://thirstyturtlefl.com/, Thirsty Turtle is a "family restaurant," "where friends, fun, and great food meet." *See* Thirsty Turtle Seagrill Homepage,

https://thirstyturtlefl.com/ last visited on December 29, 2022, a printout of which is attached hereto as **Exhibit F**. The unified website invites prospective customers to come into any one of its "four locations" for this experience. *Id.* These locations are in Juno Beach, Ft. Pierce, West Palm, and Port St. Lucie.[1] *Id.* As part of its business, Thirsty Turtle employed, and continues to employ, Servers and Bartenders to serve food and drink to customers. *See* D.E. 30 at ¶¶28-29; Peoples Dec., **Exh. D**, at ¶¶2-3; Bartlett Dec., **Exh. E**, at ¶2-3. Plaintiff estimates that over 40 other Servers and Bartenders worked for Thirsty Turtle during the applicable three-year period, and were subject to the same unlawful policies described in their declarations, and would likely participate if given notice of this action. *See* Peoples Dec., **Exh. D**, at ¶¶9-10; Bartlett Dec., **Exh. E**, at ¶9. Plaintiff is aware that other Servers and Bartenders working for Thirsty Turtle also were not paid proper minimum wages and overtime as the result of Thirsty Turtle requiring these employees to share tips with managers, and failing to pay overtime premiums on all overtime hours. *See* Peoples Dec., **Exh. D**, at ¶¶6, 8; Bartlett Dec., **Exh. E**, at ¶¶7, 9. Plaintiff and the similarly situated employee who has joined this action are such Servers and Bartenders. *See generally* **Exhs. D-E**.

These policies and practices to which Plaintiff, opt-ins, and other Servers and Bartenders were subjected are unlawful. *See, e.g.,* 29 U.S.C. § 203(m); § 206 (requiring payment of the minimum wage) and § 207 (mandating overtime premium payments for all hours over forty in a workweek). Section 203(m) of the FLSA requires that a tipped employee receive wages at least equal to the minimum wage, when combining the direct cash wage and the tips the employee receives. 29 U.S.C. § 203(m). If the employer complies with Section 203(m), it may pay an employee less than the full minimum wage (subject to a statutory threshold), and use that employee's tips as a "credit" toward its full minimum wage obligation. *Id.* This is often known as the "tip credit wage" or "tipped minimum wage." *See* D.E. 30 at ¶30.

---

[1] The website also advertises two "express" locations, which do not operate full restaurants, and are not part of this

However, §203(m), by its own terms, does not apply unless "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips," such that tips are only shared with tipped employees. 29 U.S.C. § 203(m)(2)(A)(ii). Further, the statute explicitly forbids an employer from retaining tips or permitting managers or supervisors to share in tips. 29 U.S.C. §203(m)(2)(B) ("an employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips…").

Here, Plaintiff and opt-in Plaintiff each aver that they were required to contribute tips to their managers. *See* D.E. 30 at ¶¶31-34; Peoples Dec., **Exh. D**, at ¶¶5-6; Bartlett Dec., **Exh. E**, at ¶¶5, 7. Indeed, Opt-In Bartlett avers that she was told by the managers that these payments were considered part of the managers' "salary," a clear indication that the Thirsty Turtle was meeting its own payroll obligations to non-tipped employees through misappropriation of employee tips. *See* Bartlett Dec., **Exh. E**, at ¶6. This unlawful practice makes Thirsty Turtle liable to all of its Servers and Bartenders for violation of this section of the FLSA. *See* 29 U.S.C. § 203(m).

Plaintiff further avers that she, and all other Servers and Bartenders, were subject to an additional common policy through which they were denied wages, due to Thirsty Turtle's policy of paying overtime premiums only for hours over eighty (80) in a two-week period, rather than for hours over forty (40) in a single workweek, as required by the FLSA. *See* D.E. 30 at ¶¶49-52; Peoples Dec., **Exh. D**, at ¶8; *see also* Bartlett Dec., **Exh. E**, at ¶8. The policy of denying overtime premiums for all overtime hours worked, too, violates the FLSA. *See* 29 U.S.C. § 207.

Plaintiff maintains that the described compensation practices demonstrate common policies that violate the law and adversely affect the rights of each member of this collective action. Therefore, Plaintiff seek this Court's authorization to facilitate notice to each of Thirsty Turtle's

action.

servers/bartenders during the applicable time period as this group of employees was uniformly subjected to the illegal pay practices described above, notifying all such class members of their rights to opt-in to this litigation by executing an appropriate consent as required by Section 216(b) of the FLSA. The declarations of Plaintiff and another Server attest that Thirsty Turtle's other Servers and Bartenders had similar duties, were paid in the same manner, and were not paid proper minimum and overtime wages due to these compensation policies.

## II.     APPLICABLE STANDARDS FOR COLLECTIVE ACTIONS

### A.     The Court Has Authority to Order Class Notice.

FLSA class actions operate much differently than the typical class action suits under Rule 23 of the Federal Rules of Civil Procedure. Under 29 U.S.C. § 216(b) of the FLSA, an employee belonging to a similarly situated class of Plaintiffs must "opt-in" to the class by filing a written consent with the Court in order to be bound by the outcome of the case. Without signing and filing such an express consent, employees are not bound by the outcome of the litigation. *See id.* This is the exact opposite of a Rule 23 class action, in which a plaintiff initiating a class action automatically represents every member of the class that has not expressly "opted-out."

In *Hoffman-La Roche, Inc. v. Sperling*, 110 S. Ct. 482 (1989), the Court ruled that not only did trial courts have authority to compel defendant-employers to provide names and addresses of potential plaintiffs through the pretrial discovery process, but that this authority also included sending court-authorized consent forms to potential plaintiffs. *See id.* There, the Court addressed the issue of whether the district court may play any role on prescribing the terms and conditions of communication from the named plaintiffs to the potential members of the class on whose behalf the collective action has been brought. *See id.* The Court determined that district courts have discretion in appropriate cases to implement 29 U.S.C. §216(b), by facilitating notice to potential plaintiffs. *See*

*id* at 486. This authority arises from the Court's broad discretionary power to manage the process of joining multiple parties in an orderly manner. *See id.*

Trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute. Thus, it lies within the discretion of the trial court to begin its involvement early, at the point of the initial notice, rather than at some later time. *See id.* Court authorization of notice serves the legitimate goal of avoiding a myriad of duplicative suits, and setting uniform cutoff dates to expedite disposition of the action. *See id.* at 487. In addition, the benefits of the class action provisions of 29 U.S.C. §216(b), "depend on employees receiving accurate and timely notice concerning the pendency of the collective action so they can make informed decisions about whether to participate." *Id.* at 486.

The Eleventh Circuit addressed this issue in *Dybach v. State of Florida, Department of Corrections*, 942 F.2d 1562 (11th Cir. 1991). In *Dybach*, the Eleventh Circuit found that an adult probation officer was non-exempt and therefore entitled to overtime compensation for all hours worked over forty (40) in multiple workweeks. *See id.* The Eleventh Circuit also held that the district court had authority to issue an order requiring notice to "similarly situated" employees of the Thirsty Turtle affording them the opportunity to "opt-in." *Id.*

**B. <u>The Eleventh Circuit Uses a Two-tiered Approach</u>.**

The Eleventh Circuit utilizes a two-tiered approach to certification of an opt-in class pursuant to 29 U.S.C. § 216(b). *See Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1219 (11th Cir. 2001) (stating that the two-tiered approach "appears to be an effective tool"). Under this two-tiered approach, the court makes an initial determination, based solely upon the pleadings and any affidavits, whether notice of the action should be given to potential class members. *See id.* at 1218. Because the court has minimal evidence at this stage of the proceedings, this determination is made using a ***fairly lenient standard, and typically results in conditional certification of a***

*representative class*. *See id.* (emphasis added). Thereafter, at "stage two," a more rigorous factual determination is made as to whether the potential opt-in plaintiffs are similarly situated. *See id.*

There are questions of law or fact common to Thirsty Turtle's Servers and Bartenders and the claims of the named Plaintiff in the instant matter. Indeed, Plaintiff's claims are typical of the claims of the other individuals in her position as Server and Bartender. All of the Servers and Bartenders were subject the unlawful requirement to share tips with managers, and were not paid overtime premiums for overtime hours. For purposes of defining the "similarly situated class" pursuant to 29 U.S.C. § 216(b), Plaintiff need only demonstrate that the defined class is comprised of individuals who are similarly situated to Plaintiff with regard to Thirsty Turtle's payroll practices and record keeping requirements. *See* 29 U.S.C. § 216(b); *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562 (11th Cir. 1991). There is no requirement of "strict symmetry" or "absolute identity;" rather potential class members must meet only a "sufficiently similar" standard. *Glass v. IDS Financial Services, Inc.*, 778 F. Supp. 1029, 1081 (D. Minn. 1991) (an allegation that a single decision, policy or plan precipitated the challenged action was sufficient to define the class).

As indicated above and in the attached declarations, Plaintiff has met this requirement. From the declarations, it is clear that the Servers and Bartenders were compensated in the same manner, subjected to the same policies and practices, and suffered the same injury as the result of Thirsty Turtle's common compensation policies.

### C. Courts Focus on a Common Scheme or Plan and do not Require Many Opt-ins <u>to Have Joined When Determining Whether to Grant Notice</u>.

#### a. Common Scheme or Plan

In determining whether to grant notice of a collective action, courts focus on whether plaintiffs were victims of a common scheme or plan that violated the law. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008); *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567–68 (11th Cir. 1991). This determination is made using a "fairly lenient standard." *Hipp v.*

*Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1218 (11th Cir. 2001). Plaintiffs need not conclusively demonstrate that they and the other putative class members are, in fact, similarly situated. Rather, they must show that they "and potential Plaintiffs together were victims of a common policy or plan that violated the law." *Rubery v. Buth-na-Bodhaige, Inc.*, 569 F.Supp.2d 334 (W.D.N.Y. 2008).

In support of this motion, Plaintiff has provided her own personal knowledge, as well as that of an additional server, averring that Thirsty Turtle subjected employees to unlawful common policies and practices which violated their rights to be paid proper minimum wages and overtime. *See, generally,* **Exhs. D-E.** These allegations merit notice to the class.

### b. Number of Opt-In Plaintiffs Required

Typically, in determining whether to grant a Motion for Class Notice, neither this court, nor others in Florida and across the nation, require a high number of opt-in plaintiffs to have already joined the case, and there is no magic number. *See Adams v. Gilead Grp., LLC*, 280 F. Supp. 3d 1358, 1361 (M.D. Fla. 2017) (five opt-ins in case pending for over a year, with a putative collective of over 300 individuals, met lenient standard for certification); *Bennett v. Hayes Robertson Grp., Inc.*, 880 F. Supp. 2d 1270, 1283 (S.D. Fla. 2012) ("Courts in this district have held that the existence of just one other co-worker who desires to join in is sufficient to rais[e] the Plaintiff's contention beyond one of pure speculation." (citing *Guerra v. Big Johnson Concrete Pumping, Inc.*, No. 05-14237-CIV, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006)) (quotations omitted)); *Gayle v. U.S.*, 85 Fed. Cl. 72 (Fed. Cl. 2008) (allegations in complaint and affidavit of named plaintiffs sufficient); *Dietrich v. Liberty Square*, 230 F.R.D. 574, 579 (N.D. Iowa 2005) (two affidavits provide sufficient factual basis for similarly situated inquiry); *Benjamin v. Right Path Behavioral Health Servs., LLC*, No. 3:17-CV-457-J-39MCR, 2018 WL 922350, at *3 (M.D. Fla. Feb. 7, 2018) ("Considering the fairly lenient standard, the two opt-in plaintiffs, and the three declarations, the Court finds that Plaintiff has satisfied his burden of demonstrating a reasonable basis for his claim that there are others similarly situated…"); *Brasaus v.*

*FreshPoint of S. Fla., Inc.,* No. 15-CV-61529-WPD, 2016 WL 7469979, at *2 (S.D. Fla. Feb. 12, 2016) (two opt-ins and two declarations "sufficient at this stage to demonstrate that other employees desire to opt-in"); *Shaw v. Set Enterprises, Inc.,* No. 15-CV-62152-WPD, 2016 WL 10593592, at *2 (S.D. Fla. Dec. 6, 2016) (three plaintiffs sufficient to show interest); *Scheall v. NICAEA Acad., Inc.,* No. 2:14-cv-653-FtM-29DNF, 2015 WL 3991041, at *2 (M.D. Fla. June 30, 2015) (two opt-ins in addition to plaintiff and affidavits of plaintiff and one opt-in sufficient to show interest); *Kirk v. Dr. Goodroof, Inc.,* No. 2:14-cv-639-FtM-29CM, 2015 WL 1138445, at *1-2 (M.D. Fla. Mar. 13, 2015) (plaintiff and one opt-in's testimony sufficient to show interest); *Teahl v. The Lazy Flamingo,* No. 2:13-cv-833-FtM-38CM, 2015 WL 179367, at *5-6 (M.D. Fla. Jan. 14, 2015) (one declaration and two opt-ins sufficient to show interest); *Anish v. National Securities Corp.,* No. 10-80330, 2012 WL 1906500 at *2-3 (S.D. Fla. May 25, 2012) (granting conditional certification based on affidavits of one plaintiff and one opt-in plaintiff*); Lemming v. Sec. Forces, Inc.,* No. 8:10-CV-1469-T-23AEP, 2010 WL 5058532, at *1 (M.D. Fla. Dec. 6, 2010) ("The number of plaintiffs necessary to demonstrate a desire to opt in is not many, sometimes as few as two, three, or four."); *Wynder v. Applied Card Sys., Inc.,* No. 09-80004-CIV, 2009 WL 3255585, at *3 (S.D. Fla. Oct. 7, 2009) (granting conditional certification based on affidavits from plaintiff affidavit and one co-worker); *Sanders v. MPRI, Inc.,* No. 5:08-cv-00345, 2008 WL 5572846 (W.D. Okla. October 16, 2008) (pleadings and plaintiff's affidavit sufficient); *Ackley v. City of Fort Lauderdale,* Case No.: 0:-07-cv-60960, at Doc. 45(S.D. Fla. Jan., 24, 2008) (plaintiffs and two opt-in plaintiffs sufficient); *Wajcman v. Hartman & Tyner, Inc.,* No. 07-61472-CIV-COHN, 2008 WL 203579 (S.D. Fla. January 23, 2008) (allegations in complaint and three affidavits sufficient); *Dieujuste v. R.J. Elec., Inc.,* No. 7–80272, 2007 WL 2409831 (S.D. Fla. Aug. 21, 2007) (two plaintiffs and their declarations sufficient); *Douglass v. GE Energy Reuter Stokes,* No. 1:07-CV-77, 2007 WL 1341779 (N.D. Ohio, April 20, 2007) (two affidavits stating that overtime was not paid was sufficient for certification); *Sniffen v. Spectrum Indus. Serv.,* 2007 U.S. Dist. LEXIS , at *4,

2007 WL 1341772 (S.D. Ohio February 13, 2007) (two affidavits and payroll records indicating a failure to pay overtime sufficient); *Beck v. Desoto Health and Rehab,* case No.: 2:06-CV-226-FTM-34DNF, at Docs. 23, 34 (M.D. Fla. Jan. 24, 2007) (plaintiff and one opt-in sufficient); *Robbins–Pagel v. WM. F. Puckett, Inc.,* No. 6:05–cv–1582–Orl–31DAB, 2006 WL 3393706 (M.D. Fla. Nov. 22, 2006) (three affidavits alleging claims of unpaid overtime were sufficient); *Guerra v. Big Johnson Concrete Pumping, Inc.,* Case No. 05-14237, 2006 WL 2290517 (S.D. Fla. May 17, 2006) (plaintiff and one opt-in sufficient).

Here, Plaintiff presents evidence that Thirsty Turtle employed in excess of 40 Servers and Bartenders during the three-year period at issue. Already an additional server is party to this nascent action, subject to the same policies and practices. Each attests that they believe others will also join if notified of their rights in this action.

The declarations submitted provide specific facts to this Court based on personal observation to support Plaintiff's belief that other employees are interested in opting in, making this case appropriate for conditional certification. *See Grayson v. K-Mart Corp.,* 79 F.3d 1086, 1097 (11th Cir. 1996). In addition, allowing notice to a potential collective of over 40 Servers and Bartenders serves the collective action mechanism's purpose of avoiding multiple lawsuits where numerous employees have allegedly been harmed by the same violations. *See Prickett v. Dekalb County,* 349 F.3d 1294, 1297 (11th Cir. 2003). Thus, based upon the foregoing, Plaintiff respectfully submits that she has satisfied the applicable burden of persuasion and there can be no doubt that a colorable basis exists for determining that others similarly situated to Plaintiff exist and desire to join.

### D.  Factors Irrelevant to The Court's Consideration At Stage I

#### a.  The "Merits" of Plaintiff's Claims are Not Considered When Determining Whether to Grant Notice to Potential Class Members.

Thirsty Turtle may deny Plaintiff's claims, despite the averments in the declarations submitted with this Motion. Notwithstanding, at the "conditional certification" stage, courts do not

weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be "similarly-situated." *Gjurovich v. Emmanual's Marketplace, Inc.*, 282 F.Supp. 2d 91, 96 (S.D.N.Y. 2003) ("Once the Plaintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly-situated to the named plaintiff..."); *Kreher v. City of Atlanta, Georgia*, No. 1:04-CV-2651-WSD, 2006 WL 739572, at *4 (N.D. Ga. Mar. 20, 2006) (*citing Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The focus of [the conditional certification] inquiry is not whether there has been an actual violation of law, but rather on whether the proposed plaintiffs are 'similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated.'"); *Shajan v. Barolo, Ltd.*, No. 10 CIV. 1385 (CM), 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010) (At the conditional certification stage, "[w]eighing of the merits is absolutely inappropriate."); *Goldman v. RadioShack Corp.*, No. CIV.A. 2:03-CV-0032, 2003 WL 21250571, at *8 (E.D. Pa. Apr. 16, 2003) ("A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant.").

Indeed, the fact that a jury must ultimately engage in a factual inquiry as to ultimate liability does not preclude conditional certification at this stage of the proceedings. *See Kerce v. West Telemarketing Corp.*, 575 F.Supp. 2d 1354, 1365 (S.D. Ga. 2008); *Clincy v. Galardi S. Enterprises, Inc.*, No. 1:09-CV-2082-RWS, 2010 WL 966639, at *1, 3 (N.D. Ga. Mar. 12, 2010).

**b. Courts Do Not Consider Discovery During the Conditional Certification Stage and None Has Taken Place to Date.**

The Eleventh Circuit and the district courts in it have consistently recognized that discovery at the first notice stage is unnecessary for the similarly situated determination. *See Grayson*, 79 F.3d at 1099 (holding that a district court may, but is not required to hold an evidentiary hearing prior to making its Section 216(b) decision, particularly where the Defendant's rights are not substantially affected) (emphasis in original). An examination of discovery is not appropriate because, at this stage, the Court is not making a factual determination regarding whether the putative class members

are "similarly situated." *Pendlebury v. Starbucks Coffee Co.*, No. 04-CV-80521, 2005 WL 84500, at *1 (S.D. Fla. Jan. 3, 2005). Moreover, the court at this stage need not resolve factual disputes or make credibility determinations. *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 520 (D. Md. 2000) ("Factual disputes do not negate the appropriateness of court facilitated notice."); *Scott v. Heartland Home Fin., Inc.,* No. CIV.A. 1:05-CV-2812, 2006 WL 1209813 at *3 (N.D. Ga. May 3, 2006). Accordingly, an analysis of any individualized defenses (or denials) is simply **not considered** at the conditional certification stage, but rather is reserved for the decertification stage. *Simpkins v. Pulte Home Corp.,* No. 608-CV-130-ORL-19DAB, 2008 WL 3927275 (M.D. Fla. Aug. 21, 2008) at *5, *clarified on denial of reconsideration*, No. 608CV130ORL98DAB, 2008 WL 11474926 (M.D. Fla. Sept. 24, 2008) ("individual factual analysis is saved for the second stage of certification.")

### III.   PLAINTIFF'S NOTICE IS ACCURATE AND SHOULD BE POSTED AND E-MAILED AS WELL AS MAILED, ELECTRONIC SIGNATURES SHOULD BE PERMITTED, A REMINDER NOTICE SHOULD ISSUE, AND COLLECTIVE MEMBERS SHOULD HAVE NINETY DAYS TO OPT-IN.

#### A.   Notice Should Be Texted. Emailed and Mailed, As Well as Posted.

Plaintiff's proposed judicial notice is "timely, accurate, and informative." *See Hoffmann-La Roche,* 493 U.S. at 172. As such, the proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action, and should be adopted. To that end, Plaintiff requests she be permitted to post the Class Notice (Exhibit A) in Thirsty Turtle's four locations, email and text the Class Notice to all servers/bartenders within the defined class, and mail same via first-class mail.

E-mail notice serves to further the broad remedial purpose of the FLSA and thus has widely been adopted by courts throughout the country recently. *See, e.g., Benjamin,* 2018 WL 922350, at *3 (permitting email, mail and posting); *Shaw,* 2016 WL 10593592, at *3 (permitting email notice); *Alequin v. Darden Rests., Inc.,* No. 12–61742–CIV, 2013 WL 3945919 (S.D. Fla. July 31, 2013) (noting

that the Southern District of Florida commonly approves e-mail notice to potential opt-in class members in FLSA cases). *Lewis v. Huntington Nat. Bank,* No. C2-11-CV-0058, 2011 WL 8960489 at *2 (S.D. Ohio June 20, 2011) ("The addresses on file for [former employees] may or may not continue to be accurate, and using a second mode of communication will help ensure that all of these potential plaintiffs will receive at least one copy of the Notice Package."); see also *Phelps v. MC Communications, Inc.,* No. 2:11–CV–00423–PMP-LRL, 2011 WL 3298414, at *6 (D. Nev. Aug. 1, 2011) ("The Court will permit Plaintiffs to email the notice to those employees for whom Defendants have email addresses, as well as send it by first class mail. Email is an efficient, reasonable, and low-cost supplemental form of notice, particularly where Defendant may lack current physical mailing address information for its former employees."). Many courts have authorized notice via email in FLSA cases, given the statute's remedial purpose and the goal of transmitting the notice to as many potential class members as possible. *See, e.g., Butler v. DirectSAT USA, LLC,* 876 F. Supp. 2d 560, 575 (D. Md. 2012); *see also Denney v. Lester's, LLC,* No. 4:12CV377 JCH, 2012 WL 3854466, at *4 (E.D. Mo. Sept. 5, 2012) ("[T]he Court finds fair and proper notice to current and former servers will be accomplished by regular mail, electronic mail, and postings in Defendant's break rooms.") (citing *O'Donnell v. Sw. Bell Yellow Pages, Inc.,* No. 4:11–CV–1107 (CEJ), 2012 WL 1802336, at *4 (E.D. Mo. May 17, 2012); *In re Deloitte & Touche, LLP Overtime Litig.,* No. 11 Civ. 2461(RMB)(THK, 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012) (noting that "communication through email is [now] the norm.").

Plaintiff also requests that this Court allow notice to be sent via text message. *See Landry v. Swire Oilfield Servs., L.L.C.,* 252 F. Supp. 3d 1079, 1129 (D.N.M. 2017) ("The Court finds persuasive the [p]laintiffs' argument that communication via email and text message will 'increase the chance of the class members receiving and reading the notice. . .'"). Additionally, "given the amount of junk mail that people receive, email and text message likely are more effective methods for

communicating with potential class members than traditional first-class mail." *Landry*, 252 F. Supp. 3d at 1130; *see also Irine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015) ("[T]ext messaging appears eminently reasonable to the Court. This has become a much more mobile society with one's email address and cell phone serving as the most consistent and reliable method of communication"); *Regan v. City of Hanahan*, 2017 WL 1386334, at *3 (D.S.C. Apr. 18, 2017) ("text messaging is reasonable because, in today's mobile society, individuals are likely to retain their mobile numbers and email addresses even when they move"); *Vega v. Point Security, LLC*, 2017 WL 4023289, at *4 (W.D. Tex. Sept. 13, 2017) ("[I]n the world of 2017, email and cell phone numbers are a stable, if not primary, point of contact for the majority of the U.S. population, and thus that [sic] using email and texts to notify potential class members is entirely appropriate.") Allowing notice by text message and e-mail will achieve the broad remedial purposes of the FLSA to ensure the most number of class members receive a form of the Notice and be given a chance to join this action.

In addition, Plaintiff requests that notice and consent to join be posted in a conspicuous location in each of Defendants locations where putative class members are expected to frequent. As courts have recognized, "requests [to post notices] are routinely granted and the Court sees no reason to divert from that standard of practice in this case." *Scheall v. Goodyear Tire & Rubber Co.*, 2011 WL 867043, at *4 (M.D. Fla. Mar. 10, 2011)). *See also Compagnone v. DL Pool Service, LLC* Case No. 2:15-cv-647-Ftm-99MRM, D.E. 48 (M.D. Fla. Nov. 11, 2016); *Collado v. J. & G. Transport, Inc.*, 2014 WL 5390569, at *6 (S.D. Fla. Oct. 2014) (". . . the Court orders Defendants to post a copy of the notice (both English and Spanish versions) as approved in this Order, along with the Consent to Become Party Plaintiff attached to the notice, at each of Defendants' locations at which such potential class members are employed. . . "); *Castillo v. P & R Enters., Inc.*, 517 F.Supp.2d 440, 449 (D.D.C.2007) (ordering notices to be posted in Defendant's offices).

## B. **Electronic Signatures Should Be Accepted**.

Federal Courts throughout the United States "recogniz[e] that 'we live in a time when all manner of commercial transactions are routinely cemented by electronic submission'" and "courts have approved the use of online, electronic signature opt-in forms." *Landry v. Swire Oilfield Servs., L.L.C.,* 252 F. Supp. 3d 1079, 1130 (D.N.M. 2017) (quoting *Mraz v. Aetna Life Ins. Co.*, No. 3:12–CV–805, 2014 WL 5018862, at *5 (M.D. Pa. Oct. 7, 2014); *see also Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 518 (W.D. Tex. 2015) (allowing electronic signatures, noting that the FLSA doesn't require a signature on consent forms, other courts have allowed same, and various state and federal laws require the court to honor electronic signatures); *White v. Integrated Elec. Techs., Inc.,* Nos. 11–2186, 12–359, 2013 WL 2903070, at *9 (E.D. La. June13, 2013) (granting Plaintiffs' request to allow class members to execute electronic consent forms); *Jones v. JGC Dallas LLC*, No. 3:11–CV–2743–O, 2012 WL 6928101, at *8 (N.D. Tex. Nov. 29, 2012), *report and recommendation adopted,* 2013 WL 271665 (N.D. Tex. Jan. 23, 2013) (allowing class members to be given the option to execute their consent forms online via electronic signature service). Moreover, electronic signatures cannot be deemed ineffective, because Florida's Uniform Electronic Transaction Act, Fla. Stat. § 668.50, provides that "A record or signature may not be denied legal effect or enforceability solely because the record or signature is in electronic form." *Id.* at § 668.50(7). Giving the putative class members this option is consistent with Florida and federal law, furthers the FLSA's remedial purposes and ensures that those who wish to vindicate their rights in this litigation are able to do so without unnecessary impediment.

## C. **A Reminder Notice is Appropriate.**

Similar to the email transmission of the Notice, a reminder notice is appropriate as well, and is regularly approved by Florida district courts, including in this district. *See Webb et al. V. RMS Properties,* No. 0:18-cv-60177-WPD*, at D.E.* 52 (S.D. Fla. Feb. 12, 2019); *Adams*, 2018 WL 922351, at

*1 (granting request for reminder notice); *Benjamin*, 2018 WL 922350, at *3 (same); *Shaw*, 2016 WL 10593592, at *3 (same). Accordingly, Plaintiff requests that she be permitted to transmit a reminder notice to the putative class at the half-way point in the Notice Period. Indeed, in addition to the recent decisions from Florida noted above, courts throughout the nation repeatedly have permitted such a reminder notice, because it ensures that putative class members are aware of their rights and the time within which to exercise same. *See, e.g., Harris v. Vector Marketing Corp.,* 716 F.Supp.2d 835, 847 (N.D. Cal. 2010) ("Particularly since the FLSA requires an opt-in procedure, the sending of a [reminder] postcard is appropriate."); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1126 (E.D. Cal. 2009) (ordering third-party administrator to send reminder notice, because, "[t]hese procedures provide the best possible notice to the Class Members."); *Hargrove v. Ryla Teleservices, Inc.,* No. 2:11cv344, 2012 WL 463442, at *1 (E.D. Va. Feb. 13, 2012) (authorizing plaintiffs' counsel to send a reminder letter to putative class members if responses were not received by plaintiffs within thirty days from the issuance of the original notice."); *Swarthout v. Ryla Teleservices, Inc.,* No. 4:11–CV–21 RM, 2011 WL 6152347, at *5 (N.D. Ind. Dec. 12, 2011) (same); *Graham v. Overland Solutions, Inc.,* No. 10–CV–672 BEN (BLM), 2011 WL 1769737, at *4 (S.D. Cal. May 9, 2011) (approving reminder postcard to individuals who have not returned the opt-in forms); *Gee v. Suntrust Mortg., Inc.,* No. C–10–1509–RS, 2011 WL 722111, at *4 (N.D. Cal. Feb. 18, 2011) ("Plaintiffs' counsel may mail a reminder notice forty-five days after issuance of the first notice.").

In light of the FLSA's remedial purposes and the many cases, including in this district, explicitly approving a reminder notice, this Court should permit Plaintiff to send the putative class a reminder notice, attached as **Exhibit B**, to ensure they are aware of their rights and the applicable deadlines within which to exercise them.

**D. A Ninety-Day Notice Period is Appropriate.**

Notice periods may vary, but many courts around the country have authorized up to a one hundred twenty (120) day opt-in period for collective actions. Here, in line with many other courts Plaintiff respectfully requests that the Court give putative class members ninety (90) days to return their consent to join forms and opt in to the case. Courts have routinely held that a ninety (90) day notice period is appropriate in FLSA cases. *See, e.g., Butler v. DirectSAT USA, LLC,* 876 F. Supp. 2d at 575; *Pereira v. Foot Locker, Inc.,* 261 F.R.D. 60, 68–69 (E.D. Pa. 2009); *Fiore v. Goodyear Tire & Rubber Co.,* No. 2:09–cv–843–FtM–29SPC, 2011 WL 867043, at *4 (M.D. Fla. March 10, 2011) (setting notice period at 90 days); *Gandhi v. Dell, Inc.,* No. 1:08–CV–248–JRN, 2009 WL 3427218, at *2 (W.D. Tex. Oct. 20, 2009) ("Ample authority suggests that 90 days is a reasonable amount of time to allow potential plaintiffs to opt in."); *Hernandez v. Two Bros. Farm, LLC,* No. 08-20398-CIV, 2008 WL 4613069, at *2 (S.D. Fla. Oct. 15, 2008) (authorizing 90-day notice period).

In line with the above authority, Plaintiff respectfully requests that the Court set the notice period at 90 days in this case.

**IV.     NOTICE SHOULD BE GIVEN WITHIN A THREE-YEAR STATUTE OF LIMITATIONS PERIOD.**

Notice within a three-year statute of limitations period is appropriate in this case. The FLSA allows Plaintiff to collect damages within a three-year statute of limitations if she can show that Defendant's violation of the FLSA was "willful" – meaning the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988). Whether Thirsty Turtle's violations of the FLSA were willful is an issue going to the merits of the case and not whether notice should be issued to potential claimants. *See Villatoro v. Kim Son Restaurant, L.P.,* 286 F.Supp.2d 807, 811 (S.D. Tex. 2003). The facts concerning willfulness must be elicited during discovery, and Thirsty Turtle may challenge

the three-year statute of limitations again at an appropriate time. Thus, notice should go to all individuals who were employed by Thirsty Turtle during the three-year period preceding the Court's ruling on the instant Motion. *See Resendiz-Ramirez v. P & H Forestry, LLC,* 515 F.Supp.2d 937 (W.D. Ark. 2007).

V.   **LIMITED DISCOVERY OF NAMES AND CONTACT INFORMATION OF THE PUTATIVE CLASS IS NECESSARY TO CARRY OUT NOTICE**

The opt-in provision of the FLSA requires some procedure for identifying and notifying potential class members. *Morden v. T-Mobile USA, Inc.,* 2006 WL 1727987, at *3 (W.D. Wash. June 22, 2006) (compelling the Defendant to produce the names and addresses of potentially similarly situated employees despite the fact that no conditional class certification motion was pending before the court). "The first step is to identify those employees who may be similarly situated and who may therefore ultimately seek to opt in to the action." *Id.* As such, early discovery of a mailing list is routinely disclosed in FLSA collective actions because the lists are necessary to facilitate notice. *See, e.g., Hoffmann-La Roche,* 493 U.S. at 165; *see also Anglada v. Linens 'N Things, Inc.,* 2007 WL 1552511, at *7 (S.D.N.Y. May 29, 2007); *Henry v. Quicken Loans, Inc.,* 2006 WL 2811291, at *7 (E.D. Mich. Sept. 28, 2006); *Gieseke v. First Horizon Home Loan Corp.,* 408 F.Supp.2d 1164, 1169 (D. Kan. Jan. 10, 2006); *Dietrich v. Liberty Square,* 230 F.R.D. 574, 581 (N.D. Iowa 2005). Thus, if this Court grants Plaintiff's Motion, the Court should likewise order Thirsty Turtle to provide Plaintiff with a list of all putative class members' names, addresses, telephone numbers and e-mail addresses to carry out notice, within ten days of the Court's order granting this Motion.

**CONCLUSION**

Plaintiff has met her light burden to facilitate notice to potential class members under Eleventh Circuit precedent. Accordingly, she respectfully requests that this Court permit and

supervise notice to all current and former servers/bartenders who worked for Defendant within the three years preceding the notice being issued.

## CERTIFICATE OF GOOD FAITH

Pursuant to S.D. Fla. L. R. 7.1(a)(3), Plaintiff's counsel conferred with counsel for Thirsty Turtle regarding this Motion, and is authorized to represent that Thirsty Turtle opposes the relief sought herein.

Respectfully submitted this 5th day of January, 2023.

/s/ ANGELI MURTHY
ANGELI MURTHY, ESQ., B.C.S.
FL Bar No.: 088758
MORGAN & MORGAN, P.A.
8151 Peters Rd., Suite 4000
Plantation, FL 33324
Tel: 954-318-0268
Fax: 954-327-3016
E-mail: Amurthy@forthepeople.com
*Trial Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of January 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which I understand will send notification of such filing to all counsel of record.

/s/ ANGELI MURTHY
ANGELI MURTHY, ESQ.