**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

LAUREN PEOPLES, for herself and on behalf
of those similarly situated,

      Plaintiff,

                                   Case No.:  2:22-cv-14345-DMM

vs.

TURTLEFTPIERCE, LLC, a Florida Limited
Liability Company, d/b/a THIRSTY TURTLE
SEAGRILL, PANHANDLERS, INC., a
Florida Profit Corporation, d/b/a THIRSTY
TURTLE SEAGRILL, TURTLE SPORT,
INC., a Florida Profit Corporation, d/b/a
THIRSTY TURTLE SEAGRILL, TURTLE
PARTNERS, LLC, a Florida Limited Liability
Company, d/b/A THIRSTY TURTLE
SEAGRILL.

      Defendant.
_____/

**<u>PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND</u>**
**<u>INCORPORATED MEMORANDUM OF LAW</u>**

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Lauren Peoples, for herself and on behalf of those similarly situated, hereby file this Motion for Class Certification against Defendants, TURTLEFTPIERCE, LLC, d/b/a THIRSTY TURTLE SEAGRILL, PANHANDLERS, INC. d/b/a THIRSTY TURTLE SEAGRILL, TURTLE SPORT, INC., d/b/a THIRSTY TURTLE SEAGRILL, and TURTLE PARTNERS, LLC, d/b/a THIRSTY TURTLE SEAGRILL (collectively "Thirsty Turtle").   The grounds for Plaintiff's Motion for Class Certification are set forth as follows:

## PRELIMINARY STATEMENT

This Court should certify the Plaintiff's Florida Constitution and Florida Minimum Wage Act, Fla. Stat. §448.110 ("FMWA") claim (Count II) as a class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3). The Plaintiff's proposed class definition is:

> **All hourly-paid servers and bartenders who were not classified as managers of Defendants, and worked for Thirsty Turtle at the Juno Beach, Fort Pierce, or Port St. Lucie locations, at any time from October 4, 2017 to the present.**

The Plaintiff's proposed class meets all of the requirements for class certification: members of the proposed class are identifiable and numerous; there are common questions of law and fact; the proposed class representative has claims that are typical of the class, and will fairly and adequately represent class interests. Plaintiff seeks class certification under Rule 23(b)(3) because common legal and factual issues predominate over any individual issues, and a class action is superior to other available methods for a fair and efficient adjudication case.

Further, Plaintiff requests that the Court compel the Defendants to produce a complete and accurate employee list of all hourly paid servers and bartenders who were not managerial employees of Defendants, who worked for Defendants at those three (3) locations during the five (5) years preceding this action up until the date this Court decides this motion; Plaintiff should be

1

permitted to circulate a class action notice to all putative class members.

Finally, Plaintiff seeks leave to appoint Lauren Peoples as Class Representative, and Plaintiff's counsel as class counsel pursuant to Rule 23(g). The proposed Class Representative and class counsel are respectively qualified, and will fairly and adequately represent the interests of members of the proposed class.

WHEREFORE, Plaintiff respectfully requests that the Court certify a class of all hourly-paid servers and bartenders who meet the class definition, and permit and supervise notice to all hourly-paid current and former servers and bartenders in the putative class.

## STATEMENT OF FACTS

Defendants own and operate at least three restaurant locations in Palm Beach and St. Lucie Counties. *See* Interrogatory Responses (produced collectively for all Defendants), attached as **Exhibit A**, at Response No. 13.  Defendants have employed over 100 servers and bartenders in the **three** years preceding the date collective notice issued in this action alone in the three locations it admits to operating.  For example, documents Defendants produced in discovery identify 121 servers in 2021, alone. *See* Redacted 2021 W-2 Report, attached as **Exhibit B**.

Defendants further admit, by way of their sworn interrogatory responses, that Plaintiff and the putative class members were subject to the same pay policies which are alleged to be unlawful.  **Exh. A** at Response No. 2 (confirming that Plaintiff and all putative class members were paid on a tip-credit basis, and paid standard tip-outs as a percentage of gross sales each shift, including 2.3% to the "service bartender.").   While managers were salaried, the interrogatory responses further indicate that such managers were scheduled as bartenders and received tip-outs from Plaintiff and putative class members on those shifts.  *See id.* at Response Nos. 2 and 3 ("No one **acting as a manager** were paid tip-outs" and "Managers were paid on a

2

salary basis **for all shifts they were scheduled as a manager** and received no tip outs.")
(emphasis added).  Defendants' schedules also support this conclusion.  *See, e.g.*, April 2021
Manager Schedules for each location at issue, attached as **Exhibit C.** Specifically, for example,
schedules for the Fort Pierce location show managers "Gabe," "Tammy," and "Devin," each of
whom is listed as a "Manager" in Defendants' payroll spreadsheet[1], and thus admittedly paid on
a "salary basis,"[2] each scheduled as a service bartender.  *Id.* Similarly, the April 2021 schedule
for the Juno Beach location shows managers "Ed," "Ken," "Joe," and "Charles,"[3] all scheduled
for "Service Bar."  And Port St. Lucie location managers "Travis," "Darrin," "Roger," "Matt,"
and "Sarah,"[4] are all also scheduled as "Night Bar."[5] *Id.* Because all class members were subject
to these policies, they all suffered and continue to suffer from the same class-wide wage and
hour violations alleged herein.   The legality of Defendants' policy is an issue of law common to
the class, a determination as to which will resolve the claims of all class members.

Plaintiff alleges that Defendants uniformly failed to pay Plaintiff and the putative class
full and proper minimum wages for their work, due to their policy of requiring the sharing of tips
with management.  *See id.*; **Exh. A** at Response Nos. 2, 3; Peoples Declaration, D.E. 34-4, at ¶¶
5-6; Bartlett Declaration, D.E. 34-5, at ¶¶ 5-7.  Not only do these improperly shared tips create a
minimum wage shortfall, but the unlawful policy also made Defendants ineligible to claim any
tip credit, meaning that it owes Plaintiff (and the class) the full minimum wage in actual wages
for each hour worked, rather than the lower tipped minimum wage paid. *See* 29 U.S.C. §

---

[1] *See* **Exh. B** at lines 105, 112 and 127.
[2] *See* **Exh. A** at Response No. 3 (managers were paid on a salary basis).
[3] Appear as managers also in **Exh. B** at lines 32, 51, 45, and 29, respectively.
[4] Appear as managers also in **Exh. B** at lines 102, 59, 96, 60, and 85 respectively.
[5] "Night Bar" is not defined in the key at the bottom of the schedule, but appears to correspond to the "Service Bar" designation in the other schedules.

203(m).[6]  Plaintiff's claims are typical of the claims of other former and current hourly servers and bartenders employed by Defendants, and typical of the claims of all members of the representative class identified.

As stated above, the representative class consists of all hourly-paid servers and bartenders[7] within the applicable limitations period, as each of these individuals was denied proper and lawful minimum wage as a result of Defendants' uniform unlawful pay practices. Plaintiff's declaration, the declaration of an opt-in, Defendants' sworn interrogatory responses, and Defendants' schedules, provide evidence of a sufficient factual basis to certify this class.

Plaintiff and all of her fellow hourly-paid servers and bartenders within the defined class are owed full and proper payment of their minimum wages.  It is undisputed that Defendants have acted, or refused to act, on grounds applicable to all members of the defined class, thereby making the identical relief appropriate with respect to each member.  Moreover, the common questions of law and fact predominate over any questions affecting only the named-Plaintiff, and a class action is superior to other available methods for the fair and equitable adjudication of the controversies between the representatives described above and the Defendant.

---

[6] Whether or nor Defendants violated the FMWA is directly related to whether they violated the FLSA, as under Florida law, "[f]or tipped [e]mployees meeting eligibility requirements for the tip credit under the FLSA, [e]mployers may credit towards satisfaction of the [m]inimum [w]age tips up to the amount of the allowable FLSA tip credit in 2003." Fla. Const. Art. 10 § 24(c). As such, resolution of Defendants' entitlement to take a tip credit under the FMWA is dependent upon a determination as to whether Plaintiff and the class meet the eligibility requirements for a tip credit under the FLSA. Defendants have the burden of proving that they are entitled to take a tip credit for an employee. *See May v. Steak N Shake Operations Inc.,* No. 3:14-CV-912-J-32JRK, 2014 WL 7251637, at *1 (M.D. Fla. Dec. 18, 2014). In order to do so, Defendants must prove that Plaintiff and the class were "tipped employees" as defined by the FLSA "who received proper notice and retained all tips received that were not part of a lawful tip pooling agreement." *Id.*.

[7] Defendants' payroll records appear to classify all of these individuals as "servers." *See* **Exh. B.**

Therefore, Plaintiff requests that this Court certify a class comprised of all hourly-paid servers and bartenders who were not classified as managers by Defendants, who worked for Defendants at the three (3) identified locations during the five (5) years preceding this action up until the date this Court decides this motion.

Plaintiff further requests that she be permitted to give such notice as approved by this Court to all such class members of their rights regarding this litigation.  Defendants admit that these individuals were paid in the same manner, and were uniformly subjected to the policies alleged to be unlawful.  Thus, class certification is appropriate.

## MEMORANDUM OF LAW

**I.      THE COURT SHOULD CERTIFY THE FMWA CLAIMS AS CLASS ACTION CLAIMS PURSUANT TO RULE 23.**

**A.      Plaintiff's Substantive Claims Under the FLSA and Florida Constitution.**

The FLSA provides for mandatory minimum wage as well as overtime pay at time and one-half an employee's regular rate for all hours worked in excess of forty (40) per week, subject to certain exemptions. *See* 29 U.S.C. §§ 206, 207 and 213. A private right of action to collect unpaid minimum wages is authorized by 29 U.S.C. § 216 (b)*,* which also provides for a "collective" action procedure, as opposed to the class action procedure set forth in Federal Rule of Civil Procedure 23. Under a collective action procedure, "similarly situated" employees are entitled to join in the named Plaintiff's wage claims by "opting-in" to the action, or signing and filing a consent to joinder with the court. *See* 29 U.S.C. § 216 (b). Plaintiff's Motion for Collective Certification is currently pending.  D.E. 34.

Both Florida law and the FLSA also provide for liquidated damages of double the amount of any unpaid wages, and reasonable attorney's fees. *See* 29 U.S.C. § 216 (b). The statute of limitations under the FLSA is two years from accrual of the claim, but three years for willful

violations. *See* 29 U.S.C. § 255(a). Although the opt-in procedure is mandatory for FLSA wage claims, no motion for class "certification" of the collective claims is necessary. *See Noble v. 93 University Place Corp.,* 224 F.R.D. 330, 334, n. 4 (S.D.N.Y. 2004); *Ansoumana v. Gristede's Operating Corp.* 201 F.R.D. 81, 84, n. 1 (S.D.N.Y. 2001).

The FLSA works in conjunction with state wage laws, and specifically authorizes the promulgation of higher minimum wages by state or municipal laws, and allows for the application of such state and municipal laws, to the extent that they do not contradict the FLSA. *See* 29 U.S.C. §218(a); *see also* 29 C.F.R. § 778.5.[8]

Article X, Section 24 of the Florida Constitution also provides for mandatory minimum wages. The Florida Constitution establishes a minimum wage for employees and authorizes the Florida legislature to promulgate enacting legislation regarding such minimum wages (Florida Statute 448.110) which are binding upon employers independent of any employment agreements. As relevant here, the Florida Constitution authorizes a private right of action for unpaid minimum wages and set a five-year (5) statute of limitations on such actions. Both the Constitution and the statute also provide for liquidated damages in an amount equal to the unpaid minimum wages, and reasonable attorneys' fees and costs.  Fla. Const. Art. X, §24.  In addition, the Florida Constitution specifically incorporates the eligibility requirements set forth in the FLSA as to any employer claiming that employee "tips" make up any portion of the employee's wages. *Id.*

Claims for unpaid minimum wages pursuant to the Florida minimum wage laws are

---

[8] 29 C.F.R. § 778.5 reads in pertinent part, "Where a higher minimum wage than that set in the Fair Labor Standards Act is applicable to an employee by virtue of such other legislation, the regular rate of the employee, as the term is used in the Fair Labor Standards Act, cannot be lower than such applicable minimum, for the words 'regular rate at which he is employed' as used in section 7 must be construed to mean the regular rate at which he is lawfully employed."

analogous to minimum wage claims under the FLSA, and thus, "hybrid" class action suits under Rule 23 (for state law minimum wages) and 29 U.S.C. § 216(b) (for minimum wages and/or overtime wages) may proceed without conflict. *See generally* Advisory Committee's Notes to Federal Rule 23(b)(3) ("The present provisions of 29 U.S.C. § 216(b) are not intended to be affected by Rule 23, as amended."); *see also, e.g., Prickett v. DeKalb County,* 349 F.3d 1294, 1297 (11th Cir. 2003) (distinguishing opt-in procedure under FLSA and Rule 23); *Bennett v. Hayes Robertson Group, Inc*., 880 F.Supp.2d 1270, 1276-1277 (S.D. Fla. 2012) (recognizing "hybrid class actions"); *Scantland v. Jeffry Knight, Inc.,* 2010 WL 4117683, at *4 (M.D. Fla. Sept. 29, 2010) (same).

**B.**   **Applicable Standard**.

Federal Rule of Civil Procedure 23 provides the standard for certification of class actions in federal court. Rule 23 (a) sets forth the following prerequisites to class certification:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

On the other hand, Rule 23(b) provides for three different categories of class action and sets forth the requirements for maintaining a class action. As relevant to this case, a class action is authorized under Rule 23(b)(3) when:

> The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

As many courts have recognized, on a motion to certify a class, a court should accept all well-plead allegations in the pleadings as true, and should not determine or resolve the merits or claims of the case unrelated to the requirements of Rule 23. *See Bush v. Calloway Consolidated Group River City, Inc*., 2012 WL 1016871, at *3 (M.D. Fla. March 26, 2012) (citations omitted); *Drayton v. Western Auto Supply Co.*, Case No. 01-10415, 2002 WL 32508918, at *6 (11th Cir. March 11, 2002) ("Therefore, it is proper to accept the substantive allegations contained in the complaint as true when assessing Rule 23 requirements."); *Fla. Pediatric Soc'y v. Benson*, No. 05-23037-CIV, 2009 WL 10668698, at *7 (S.D. Fla. June 25, 2009), *report and recommendation adopted sub nom. Fla. Pediatric Soc'y/ Fla. Chapter of Am. Acad. of Pediatrics v. Benson*, No. 05-23037-CIV, 2009 WL 10668660 (S.D. Fla. Sept. 30, 2009) (same); *see also Heffner v. Blue Cross & Blue Shield of Ala., Inc.,* 443 F.3d 1330, 1337 (11th Cir. 2006)("a district court may not resolve the merits of a case when ruling on a Rule 23 motion"); *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 177, (1974)(In considering a class certification motion, the Court accepts the allegations as true and does not conduct "a preliminary inquiry into the merits" of the case.).

The Court has broad discretion in granting certification, and Plaintiff acknowledges that "it may be necessary to probe behind the pleadings before coming to rest on the certification issue." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982). However, as another court in this District has noted, "[w]hile the Court's certification analysis 'may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.'" *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 693 (S.D. Fla. 2015) (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455, 466 (2013)) (internal quotations and citations omitted).  Plaintiff bears the burden of establishing each of the requirements for class certification. *See Valley Drug*

*Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181, 1188 (11th Cir.2003) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615–18 (1997)). Trial courts are given substantial discretion in determining whether to grant class certification, such latitude reflecting that the district court is often in the best position to assess the propriety of the class and has the ability, pursuant to Rule 23(c)(4)(B), to alter or modify the class, create subclasses, and decertify the class whenever warranted. *See Babineau v. Federal Exp. Corp.,* 576 F.3d 1183, 1189 (11th Cir. 2009); *Perez v. Metabolife Intern., Inc.,* 218 F.R.D. 262, 274 (S.D. Fla. 2003) ("a district court has substantial discretion in deciding whether to certify a class action.")(citations omitted). As courts routinely have recognized, "if there is to be an error made, let it be in favor and not against the maintenance of the class action." *Fernandez-Roque v. Smith*, 539 F.Supp. 925, 946 (N.D. Ga. 1982) (citing, 7 Wright and Miller, Federal Practice and Procedure, s 1753, page 541 (1972)).

In addition, "where a collective action under the FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims." *Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 202-03 (S.D.N.Y. 2006). Thus, if the Court grants Plaintiff's Motion for Collective Certification, and for the reasons stated therein, this Motion, too, should be granted.

Here, Plaintiff seeks certification of her Florida Constitution claims under Rule 23 (b)(3). As such, she will demonstrate that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Further, the Court must define the class and class claims, issues, and defenses at the time of certification of the class pursuant to Rule 23(c), and must appoint a class counsel pursuant to Rule 23 (g).

Plaintiff bears the burden of establishing each requirement for class certification under Fed. R. Civ. P. 23. Failure to prove any Rule 23(a)'s factors precludes class certification. *See Valley Drug,* 350 F.3d at 1188. More specifically, each of the conditions of Rule 23(a) must be satisfied, and Plaintiff must demonstrate that her action fits within one of the three categories of Rule 23(b). *See id.* However, assuming the truth of the factual assertions contained in the complaint, *Shelter Realty Com. v. Allied Maint. Corn.,* 574 F.2d 656, 661 n.15 (2d Cir. 1978), "[r]ule 23 is [to be] given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility," *Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2d Cir. 1997).

Here, Plaintiff seeks to certify a class comprised of Defendants' servers and bartenders in the five-year period prior to this lawsuit, who Plaintiff alleges were wrongly denied minimum wages in contravention of the Florida Constitution. The crux of Plaintiff's allegations is that *all* of these servers and bartenders were victims of the illegal pay practices described Under the Florida Constitution and FMWA, the named Plaintiff and the putative class members have common claims for unpaid minimum wages, because Defendants unlawfully required all of them to share tips with managers. Thus, Defendants were ineligible to pay the lower "tipped" minimum wage, and owe minimum wages to Plaintiff and the class both in the form of the difference between the full minimum wage and the wage actually paid, and disgorgement of the tips unlawfully retained. *See generally* Amended Complaint, D.E. 30.

### C.    Florida State Law and Constitutional Claims Are Well Suited for Rule 23 Treatment.

This is not an issue of first impression. Rather federal courts throughout Florida routinely grant class certification of wage and hour claims under Florida state law. *See, e.g., Lopez v. Hayes Robertson Grp., Inc.*, No. I3-10004-CIV, 2013 WL 10561294, at *1 (S.D. Fla. Sept. 23, 2013), *amended*, No. I3-10004-CIV, 2013 WL 10568828 (S.D. Fla. Sept. 25, 2013)

(certifying both R. 23 opt-out class and FLSA opt-in collective for a class of servers and bartenders where plaintiffs alleged, *inter alia*, that the defendants "…collected Plaintiff's tips, thus creating a tip pool, but improperly shared some of those tips with non-tipped employees, and… retained some of the tips for themselves"); *Garcia-Celestino v. Ruiz Harvesting, Inc*., 280 F.R.D. 640 (M.D. Fla. 2012)(certifying Florida state wage and hour claims); *Rosario-Guerrro v. Orange Blossom Harvesting*, 265 F.R.D. 619 (M.D. Fla. 2010 (same); *Napoles-Arcila v. Pero Family Farms, LLC*, 2009 WL 1585970 (S.D. Fla. June 4, 2009)(same); *Mesa v. Ag-Mart Produce, Inc*., 2008 WL 2790224 (M.D. Fla. July 18, 2008)(same). Indeed, some courts have granted class certification even in cases where certification of an opt-in collective action was denied. *See, Kubiak v. S.W. Cowboy, Inc.,* 2014 W.L. 2625181 (M.D. Fla. 2014) (certifying R. 23 class FMWA claims while simultaneously denying opt-in FLSA collective action).

### D. __Plaintiff Satisfies All Of Rule 23's Prerequisites.__

The Court should certify the proposed class because it meets the requirements of Rule 23(a)(1-4) (numerosity, commonality, typicality, and adequacy of representation), and at least one prong of Rule 23(b): Rule 23(b)(3). *Grimes v. Rave Motion Pictures Birmingham,* 264 F.R.D. 659, 662–64 (N.D. Ala. 2010). The Court should also appoint Plaintiff's counsel as Class Counsel under Rule 23(g).

### 1. __Ascertainability.__

Although it does not appear in the language of Rule 23, there is an implied requirement of ascertainability for class certification. *Jankowski v. Castaldi,* 2006 WL 118973, at *5 (E.D.N.Y. Jan. 13, 2006)(citing *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 209 F.R.D. 323, 337 (S.D.N.Y. 2002)). Another court in this District has held that "[a]n identifiable class exists if its members can be ascertained by reference to objective criteria. The analysis of the

objective criteria also should be administratively feasible. Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual inquiry." *Sarris*, 311 F.R.D. 688, 693 (S.D. Fla. 2015) (quoting *Bussey v. Macon Cnty. Greyhound Park, Inc.,* 562 Fed.Appx. 782, 787–88 (11th Cir.2014)). Here, as is apparent from Defendants' ability to easily generate a list of the servers/bartenders in question over a three year period, the class members are readily identifiable by job title, within Defendants' personnel documents and payroll records.

Plaintiff's proposed class definition, which covers a putative class of over 100 of Defendants' employees, and is identifiable from Defendants' records, satisfies this requirement. Consequently, these putative class members are ascertainable.

### 2. <u>Numerosity</u>.

The first requirement under Rule 23(a) is that the putative class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Generally, a class should have no fewer than 21 members and will satisfy the numerosity requirement if it has more than 40." *Vega v. T–Mobile USA, Inc.,* 564 F.3d 1256, 1266 (11th Cir. 2009); *Cox v. American Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir. 1986) (generally, over 40 class members is adequate to satisfy the numerosity requirement); *Martinez v. Mecca Farms, Inc.,* 213 F.R.D. 601, 605 (S.D. Fla. 2002) (MIDDLEBROOKS, J.).

Here, Defendants' documents show that the class is comprised of at least 120 people. Plaintiff has met this requirement.

### 3. <u>Commonality</u>.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts should "liberally construe [ ] the commonality requirement." *Trief v.

*Dun & Bradstreet Corp.,* 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992) (citations omitted), and find it satisfied if Plaintiff points to at least one common issue. *Marisol A.,* 126 F.3d at 376 (*"a common question* of law or of fact") (emphasis added).  Commonality, "does not require that all of the questions of law or fact raised by the case be common to all plaintiffs," but a class action "must involve issues that are susceptible to class-wide proof." *Id.; Cooper v. S. Co.,* 390 F.3d 695, 719 (11th Cir.2004), *overruled in part of other grounds by Ash v. Tyson Foods, Inc.,* 564 U.S. 454, 457–58 (2006). "The commonality element is generally satisfied when a plaintiff alleges that '[d]efendants have engaged in a standardized course of conduct that affects all class members.'" *In re Checking Account Overdraft Litigation*, 275 F.R.D. 666, 673 (S.D. Fla. 2011) (citing *In re Terazosin Hydrochloride,* 220 F.R.D. 672, 687 (S.D.Fla.2004); *Agan v. Katzman & Korr, P.A.,* 222 F.R.D. 692, 697 (S.D. Fla. 2004); *In re AmeriFirst Sec. Litig.,* 139 F.R.D. 423, 428 (S.D. Fla. 1991).   Here, Defendants' policies of paying all putative class members the tipped minimum wage, and requiring the sharing of tips with individuals classified as managers, provides the type of "unifying thread" Rule 23(a)(2) requires.  *In re Vivendi Universal S.A.,* 242 F.R.D. 76, 84 (S.D.N.Y.2007) (citing *Cutler v. Perales,* 128 F.R.D. 39, 44 (S.D.N.Y.1989)).

Many common questions are present here including, but not limited to:

(1) Whether Defendants paid their hourly servers and bartenders an hourly rate of less than the full minimum wage;

(2) Whether the putative class members were required to share tips with individuals Defendants classified as managers;

(3) Whether the salaried managers scheduled as service or night bartenders collected a portion of hourly servers' and bartenders' tips;

(4) Whether Defendants violated the law when they required hourly-paid servers and

bartenders to share tips with salaried managers scheduled or performing duties as service or night bartenders;

(5) Whether Defendants provided notice of their intention to take the tip credit sufficient to satisfy their obligations under the FMWA;

(6) Whether Defendants are a covered enterprise;

(7) Whether Defendants willfully violated the FMWA; and

(8) Whether Defendants' violation of the FMWA was in good faith.

The answers to these questions, as to each putative class member, are the same.

### 4. **Typicality**.

The third element, typicality, focuses on whether the class representative possesses the same interest and suffers the same injury as the class member. "Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Wooden* v. *Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262,1287 (11th Cir. 2001). The claim of a class representative is typical if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. *See J. W.* v. *Birmingham Board of Educ.*, 2012 WL 3849032, at *9 (N.D. Ala. Aug. 31, 2012). The typicality requirement may be satisfied despite substantial factual differences, however, when there is a 'strong similarity of legal theories.'" *See Murray* v. *Auslander,* 244 F.3d 807, 811 (11th Cir. 2001) (quoting *Appleyard* v. *Wallace,* 754 F.2d 955,958 (11th Cir. l985)).

Here, Plaintiff's claims arise from the same course of conduct as the claims of the class – Defendants' policy of requiring servers and bartenders to tip-out managers on each shift. Thus, Plaintiff has demonstrated typicality.

5. **<u>Adequate Representation</u>.**

The fourth requirement, adequacy, encompasses both the adequacy of class counsel,[9] and the adequacy of the named Plaintiff to prosecute the action. *Griffin* v. *Carlin,* 755 F.2d 1516, 1533 (11th Cir. 1985).  Class representatives are required to "fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), and must, therefore, "possess the same interest and suffer the same injury as the class members." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997).  The adequacy requirement seeks to ensure that the interests of class members are not "antagonistic to one another." *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 290-91 (2d Cir. 1992) (internal citations and quotation marks omitted).  In determining adequacy of representation, courts also consider whether the proposed "representative is familiar with the action, whether he has abdicated control of the litigation to class counsel, and whether he is of sufficient moral character to represent a class." *Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004) (internal citations omitted). Here, the named Plaintiff is familiar with the action, has actively participated in all stages of the case, including in providing a verified complaint, a declaration for collective certification, and preparing for mediation, has a good relationship with undersigned counsel, and has the same interests as the rest of the proposed class, she is an adequate class representative.

6. **Common Questions of Law and Fact Predominate and Class Action**
**<u>Certification is the Superior Method of Litigating This Action</u>.**

Rule 23(b)(3) requires that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.,* 521 U.S. at 623. That Plaintiff easily meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *See Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 157 n.13 (1982)) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

### a. Common Questions of Law and Fact Predominate.

To satisfy the predominance requirement, a named plaintiff must establish that the issues subject to generalized proof in the class action, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof. *See Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir. 1997). Thus, predominance requires not just the presence of common issues, but also that those common issues actually outweigh any individualized issues in the litigation. "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804, 809 (2011).

Here, all members of the class are unified by common facts - that all hourly servers and bartenders have the same material duties, and that Defendants require them to share their tips, equal to the same percentage of each of their sales, with an individual classified as a manager. They are also unified by a common legal theory - that Defendants' requirement to share tips in this manner violates the FMWA. Thus, Plaintiff has carried her burden regarding the predominance requirement.[10]

---

[9] The adequacy of proposed class counsel is addressed in detail in Section 7, *infra*.

[10] The calculation of damages will be specific to each class member based on the hours they worked, and is largely a matter of mathematical calculation. In this Circuit, "the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate…" *Allapattah Servs., Inc. v. Exxon Corp.,* 333 F.3d 1248, 1261 (11th Cir. 2003).

### b. A Class Action is the Superior Method of Adjudication

The second part of the 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods *available* for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.,* 406 F.2d 291, 301 (2d Cir. 1968) (emphasis added). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: whether individual class members wish to bring, or have already brought, individual actions; the desirability of concentrating the litigation of the claims in the particular forum; and the difficulties of managing the case as a class action. Fed. R. Civ. P. 23(b)(3). Denying class certification on manageability grounds is "disfavored" by the courts and "should be the exception rather than the rule." *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 140 (2d Cir.2001)(internal quotations omitted). "When determining if a class action is superior, 'we are not assessing whether this class action will create significant management problems, but instead determining whether it will create relatively more management problems than any of the alternatives,'" such as separate lawsuits by class members. *Hinson v. Bellsouth Telecommunications, Inc.,* 275 F.R.D. 638, 648 (M.D. Fla. 2011) (citation omitted). Here, each of these factors favors certification.

Plaintiff is unaware of anyone interested in "controlling the prosecution ... of separate actions" or of any other pending wage lawsuits against Defendants by putative class members. Moreover, the value of each individual claim, while not insignificant, would quickly be swallowed up by the costs of litigation. *See Torres v. Gristede's Operating Corp*., 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) ("[b]ecause litigation costs would likely exceed any gains from [the] wage recovery, class members would be unlikely to litigate individually.").

It is also likely that current employees are likely to refrain from filing individual claims due to fear of retaliation. *Torres,* 2006 WL 2819730, at *18 ("since some class members are still employees … class members may fear reprisal and would not be inclined to pursue individual claims."). An employee fearful of retaliation or of being "blackballed" in his or her industry may choose not to assert his or her FLSA rights. *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 163 (S.D.N.Y. 2008) ("Indeed, it may be that in the wage claim context, the opt-out nature of a class action is a valuable feature lacking in an FLSA collective action, insofar as many employees will be reluctant to participate in the action due to fears of retaliation." (internal citations omitted)); *Scott v. Aetna Services,* 210 F.R.D. 261, 267 (D. Conn. 2002) (noting "the evidence that potential class members failed to join the FLSA class action because they feared reprisal"). *See generally Sanft v. Winnebago Indus., Inc.,* 214 F.R.D. 514, 524 (N.D. Iowa 2003) (compiling cases holding Rule 23's numerosity requirement satisfied because, where some class members are still employed by the defendant, "concern regarding employer retaliation or reprisal renders individual joinder less practicable").

A class action is far superior to litigating over one hundred individual claims without a class-wide liability inquiry. Numerous individual actions would waste judicial resources and create the danger of conflicting outcomes. Where, as here, there are questions of law and fact common to all employees of the class, it is more efficient to litigate the claims in one forum. *See Borcea v. Carnival Corp.*, 238 F.R.D. 664, 676 (S.D. Fla. 2006)(in wage and hour case class action superior to many individual claims), citing *Bolanos,* 212 F.R.D. at 158 ("The interests of justice will be well served by resolving the common disputes of potential class members in one forum."). It is certainly superior to the only real alternative - effectively allowing the Defendants' pay practices to continue unchecked.

18

If the Court grants Plaintiff's motion for class certification, the class-wide liability inquiry will focus on whether Defendants have a common illegal policy or practice that violated rights of individual class members - *i.e.,* whether Defendants impermissibly paid sub-minimum wages to its hourly servers and bartenders when they required these employees to share tips with managers.  Given Defendants' uniform compensation policy, at trial the issue will be whether the pay policy and practice was illegal. Given the nature of the issues at bar, there can be no question that liability, in regard to the entire class, can be determined based upon common proof.

### 7. <u>Plaintiff's Counsel Should be Appointed Class Counsel</u>.

Under Rule 23(g), a court that certifies a class action must also appoint class counsel. Fed. R. Civ. P. 23(g)(1)(A). In appointing such counsel, the Court must determine that counsel will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The Court "must consider [1] the work counsel has done in identifying or investigating potential claims in the action, [2] counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, [3] counsel's knowledge of the applicable law, and [4] the resources counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(C)(i). The Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class; [and] may direct potential class counsel to provide information on any subject pertinent to the appointment[.]"  Fed. R. Civ. P. 23(g)(1)(C)(ii)(iii).

Plaintiff respectfully submit that her counsel is qualified in handling class action and collective wage claims and, considering the work their counsel has performed in investigating their claims and pursuing this litigation, counsels' experience and knowledge of the applicable law, and the financial resources that counsel has already committed and will continue to commit to this litigation, counsel are qualified to represent the class, and will fairly and adequately

represent the interests of the class. *See, generally,* Declaration of Angeli Murthy ("Murthy Aff.") attached hereto as **Exhibit D**.  Plaintiff's counsel previously has served and/or is serving as class counsel in dozens of collective/class actions and/or putative collective and class actions throughout the country.  Further, Morgan & Morgan is one of the largest trial law firms in the country, with over 700 lawyers and vast resources to litigate this case on behalf of the entire class.  *See id.*  Plaintiff therefore requests that her counsel be appointed class counsel upon certification of the class.

Through investigation into the allegations, pursuing discovery, scheduling mediation, and filing motions for collective action and class action notice, Plaintiff's counsel has demonstrated commitment to the case, and the ability to effectively litigate same.  Further, proposed class counsel is experienced in class actions and wage-and-hour litigation. (Murthy Aff. ¶¶ 6-7).  For these reasons, the Court should appoint Angeli Murthy and Morgan & Morgan as class counsel.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff respectfully requests an Order:

(a)  pursuant to Rule 23 (a) and (b) (3) certifying a class of:

**All hourly-paid servers and bartenders who were not classified as managers of Defendants, and worked for Thirsty Turtle at the Juno Beach, Fort Pierce, or Port St. Lucie locations, at any time from October 4, 2017 to the present.**

(b)  compelling Defendants to produce a list of all hourly-paid servers and bartenders employed during the five (5) years preceding this action through the date certification is granted;

(c)  permitting Plaintiff to circulate a class action notice to all putative class members;

(d)  appointing Lauren Peoples as Class Representative; and

(e)  appointing Plaintiff's counsel, Angeli Murthy of Morgan & Morgan, as class counsel pursuant to Rule 23 (g).

## <u>CERTIFICATE OF GOOD FAITH</u>

Pursuant to S.D. Fla. L. R. 7.1(a)(3), Plaintiff's counsel conferred with counsel for Thirsty Turtle regarding this Motion, and is authorized to represent that Thirsty Turtle opposes the relief sought herein.

Respectfully submitted this 22nd day of January, 2023.

**/s/ ANGELI MURTHY**
ANGELI MURTHY, ESQ., B.C.S.
Florida Bar No. 088758
MORGAN & MORGAN, P.A.
8151 Peters Road, Ste. 4000
Plantation, Florida 33324
Telephone: (954) 318-0268
Facsimile:  (954) 333-3515
E-mail: Amurthy@forthepeople.com

*Trial Counsel for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on the 22nd day of January, 2023, the foregoing document was filed using the Florida Courts E-Filing Portal, which will send notification to all counsel of record.

/s/ ANGELI MURTHY
Angeli Murthy, Esquire
