**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

LAUREN PEOPLES, for herself and on behalf
of those similarly situated,

     Plaintiff,

                                      Case No.:   2:22-cv-14345-DMM

vs.

TURTLEFTPIERCE, LLC, a Florida Limited
Liability Company, d/b/a THIRSTY TURTLE
SEAGRILL, PANHANDLERS, INC., a
Florida Profit Corporation, d/b/a THIRSTY
TURTLE SEAGRILL, TURTLE SPORT,
INC., a Florida Profit Corporation, d/b/a
THIRSTY TURTLE SEAGRILL, TURTLE
PARTNERS, LLC, a Florida Limited Liability
Company, d/b/a THIRSTY TURTLE
SEAGRILL.

     Defendant.

_____/

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED
CLASS AND COLLECTIVE ACTION SETTLEMENT AND MEMORANDUM IN
<u>SUPPORT THEREOF</u>**

## INTRODUCTION

As reflected in the accompanying Class Action Settlement Agreement ("Agreement"), **EXHIBIT A**, Plaintiff, Lauren Peoples ("Plaintiff" or "Peoples"), and Defendants, TURTLEFTPIERCE, LLC, PANHANDLERS, INC., TURTLE SPORT, INC., and TURTLE PARTNERS, LLC, ("Defendants"), have agreed to settle this action on behalf of 325 hourly-paid servers and/or bartenders in Defendants' Jupiter, Juno Beach and Ft. Pierce locations who were employed between October 4, 2017 and December 31, 2022 (the "Class" or "Class Members"). The proposed settlement creates a common fund of $1,719,924.72 which will be used to satisfy the claims in this action. If the Court approves the requested attorney's fees/expenses of 33 1/3% of the first $1,700,000 of the settlement amount, then $1,153,258.05 will be available to the 325 Class Members, an average of $3,548.49 per Class Member. Plaintiff seeks permission to issue the Notice attached as **Exhibit B** to each of the 325 Class Members.

Under the December 1, 2018, amendments to Federal Rule of Civil Procedure 23 ("Rule 23"), the Court "should direct notice in a reasonable manner" to Class Members covered by a proposed settlement if the parties demonstrate that, at the post-notice final approval stage, the Court "will likely be able to" (i) give final approval of the settlement under the criteria described in Rule 23(e)(2) and (ii) certify the settlement class. *See* Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii). These requirements are satisfied, and Plaintiff respectfully submits that the Court should approve the proposed class notice form and protocols as constituting "the best notice that is practicable" under the criteria described in Rule 23(c)(2)(B).  Plaintiff further seeks an order appointing Morgan & Morgan, P.A. ("M&M")  as interim class counsel pursuant to Civil Rule 23(g)(3), and appointing Plaintiff as the class representative.

I.      **Factual and Procedural Background**

   A.      **Factual Allegations**.

Defendants own and operate at three restaurant locations in Palm Beach and St. Lucie Counties. Plaintiff was a bartender and server, and alleges that she and other servers and bartenders in Defendants' employ were denied proper minimum wage compensation in violation of the Florida Minimum Wage Act ("FMWA") and Fair Labor Standards Act ("FLSA"), as well as proper overtime compensation under the FLSA. D.E. 30 at ¶¶ 6, 42.  Specifically, Plaintiff alleges that, at each location, that Defendants uniformly failed to pay Plaintiff and the putative class full and proper minimum wages for their work, due to their policy of requiring the sharing of tips with management. D.E. 30 at ¶¶30-34.  Plaintiff alleges that these improperly retained tips created a minimum wage shortfall, and also made Defendants ineligible to claim any tip credit, meaning that Defendants owe Plaintiff (and the class) the full minimum wage in actual wages for each hour worked, rather than the lower tipped minimum wage paid. *Id.* ¶ 35; *See* 29 U.S.C. § 203(m).[1]  Thus, Plaintiff claims that Defendants owe her the Class Members the tip credit taken, and return of tip monies retained by salaried managers.  Plaintiff also alleges that Defendants failed to pay overtime premiums for all overtime hours, and demanded payment of those premiums. D.E. 30 at ¶ 52.

   B.      **Procedural History**.

Plaintiff commenced this case by filing her Complaint on October 4, 2022.  D.E. 1.

---

[1] Whether or nor Defendants violated the FMWA is directly related to whether they violated the FLSA, as under Florida law, "[f]or tipped [e]mployees meeting eligibility requirements for the tip credit under the FLSA, [e]mployers may credit towards satisfaction of the [m]inimum [w]age tips up to the amount of the allowable FLSA tip credit in 2003." Fla. Const. Art. 10 § 24(c). As such, resolution of Defendants' entitlement to take a tip credit under the FMWA is dependent upon a determination as to whether Plaintiff and the class meet the eligibility requirements for a tip credit under the FLSA. Defendants have the burden of proving that they are entitled to take a tip credit for an employee. *See May v. Steak N Shake Operations Inc.,* 2014 WL 7251637, at *1 (M.D. Fla. Dec. 18, 2014). In order to do so, Defendants must prove that Plaintiff and the class were "tipped employees" as defined by the FLSA "who received proper notice and retained all tips received that were not part of a lawful tip pooling agreement." *Id.*.

Thereafter, she filed her Amended Class and Collective Action Complaint on December 28, 2022, in which she added class action claims under FMWA. D.E. 30. Another server, Hayleigh Bartlett, opted in to the action on January 5, 2023. Plaintiff subsequently filed a motion for collective certification under the FLSA on January 7, 2023. While Defendants initially indicated that they would oppose Plaintiff's request for conditional certification, they later reconsidered, and the Parties agreed to work cooperatively on the proposed notice to the collective. D.E. 41. Plaintiff also filed a motion for class certification on January 22, 2023, which remains pending, and which Defendants have agreed not to oppose for purposes of settlement only.

Throughout the life of the action, the Parties engaged in extensive detailed discussions regarding resolution of this matter on a class-wide basis, and agreed to attend mediation.

### C.    Discovery.

Plaintiff served multiple sets of comprehensive formal discovery upon Defendants, and Defendants provided payroll records for all Class Members for the time period from October 4, 2017, to December 31, 2022. Plaintiff's counsel, along with Martin Williams, CPA/CFF, CFE (a forensic accountant and data analyst that M&M often retains to analyze timekeeping and payroll data), reviewed thousands of pages of documents in preparation for the mediation process discussed below and the settlement discussions that led to the parties' Settlement Agreement. These documents included corporate policies, personnel documents, payroll records, time records, employee handbooks, records of cash tips paid to managers scheduled as "service bartender," and schedules and calendars. In addition, Plaintiff's counsel spoke extensively with Plaintiff and opt-in Hayleigh Bartlett regarding the records and allegations. The records Defendants produced showed that the policies of paying employees the 'tip credit" wage, as well as of "tipping out" managers when they were scheduled as service bartenders was uniform at

each of the three locations. They further showed that where total hours were under eighty in a two week period, Defendants did not pay overtime on hours over forty in a single workweek.

Defendants were able to produce payroll records for the entirety of the time period at issue, which contained total hours for each pay period and thus could be used to calculate damages under the FMWA with certainty.  However, Defendants were able to produce time records only for the time period from December 2020 through December 2022 which were necessary to perform overtime calculations.  As a result, Plaintiff's counsel and expert extrapolated calculations for the remaining time period applicable under the FLSA (October 2019 through December 2020).

     **D.**    <u>**Settlement Negotiations and Mediation.**</u>

On February 2, 2023, the Parties participated in an all-day mediation in Jupiter, Florida, with the assistance of Mediator, Cathleen Scott, of Scott Law Group.  *See* **Exh. A** at ¶35.  Ms. Scott is Board Certified by the Florida Bar as an expert in Labor and Employment Law, was the president of the Labor and Employment Section of the Florida Bar, and is a very knowledgeable and skilled wage and hour class action mediator, with a nationwide practice. *See id.*  In the mediation, the Parties exchanged additional information regarding the policies and practices at issue, as well as defenses.

As described above, and with Mr. Williams' assistance, M&M analyzed the data and estimated that if each Class Member had been paid the full minimum wage and not shared any tips with "service bartenders" it would have resulted in additional payments to Class Members of approximately $1,275,000.00 over the full five-year statute of limitations applicable to "willful" violations.  Including potential penalties for liquidated damages, Plaintiff calculated the maximum exposure to Defendant for the five-year period to be approximately $2,550,000.00. For the four-year statute of limitations applicable to a non-willful violation of the law, Plaintiff

calculated the minimum wage and disgorgement exposure at approximately $1,050,000.00. With potential penalties for liquidated damages for a four-year statute of limitations, the exposure increased to $2,100,000.00.

After ten hours, the Parties reached agreement in principle and executed a memorandum of understanding, agreeing to resolve the case for $1,700,000.00, plus an amount to be calculated from Defendants' time records for owed and potentially owed overtime compensation, plus the costs of mediation, plus payment to Plaintiff for a general release of claims. The Parties filed a notice of settlement the next day. *See* D.E. 44. The memorandum of understanding contemplated that Defendants would share additional timekeeping data to allow Plaintiff to make calculations as to the overtime portion of the claim.

After additional exchange of time record data, data analysis as to the overtime claims, and additional negotiation and conferences, the Parties have now reduced their agreement to a formal Settlement Agreement and Release, which they are presenting to the Court for preliminary approval. *See* **Exh. A**.

## II.   Summary of the Settlement Terms

### A.   The Settlement Fund.

Defendants have agreed to create a settlement fund of up to $1,719,924.72 ("the Fund"). *See* **Exh. A**, ¶ 16.  The Fund will cover payments to Participating Class Members and Court-approved attorneys' fees and costs. *Id*. ¶ 16.

### B.   Payment to Mediator

Defendants agreed to pay the full cost of the mediation held on February 2, 2023.

### C.   Release

Class Members who do not opt out of the settlement will release all FMWA claims. *Id*. ¶ 59.  In addition to releasing their Florida minimum wage claims, all Class Members who timely

submit a claim form will also release their FLSA claims. *Id*.

    **D.**   <u>**Eligible Class Members**</u>.

The Rule 23 class consists of 325 current and former hourly paid bartenders and servers who worked for Defendants at any time between October 4, 2017, and December 31 2022, except for those who opt out. *Id*. ¶¶ 25, 27, 55.

    **E.**   <u>**Allocation Formula**</u>.

All Participating Class Members, **whether or not they submit a claim form**, will receive payment of full wages and liquidated damages for **any** hours over forty in a workweek for which they were undisputedly not paid overtime premiums between December 1, 2020, and December 31, 2022, based on Defendants' time and payroll records. *Id*. ¶¶ 46, 46(a)(i)-(iii). Because time records prior to December 2020 are not available, the Parties agreed to use data from October 2021 to March 2022, and analysis by Plaintiff's data expert, to extrapolate overtime calculations as to potential claims between October 2019 and December 2020, taking into account that in-house restaurant operations were severely reduced during COVID-19 from the end of March 2020 to December 2020.

Defendants maintain that they did pay overtime premiums on hours over 80 in a two-week period. Thus, class members who worked such hours will receive 50% of the allegedly owed overtime premium for those hours, and equal liquidated damages. *Id*. ¶ 46(a)(ii).

In addition to payment of overtime premiums, plus liquidated damages on those amounts as described above, Class members who timely submit claim forms will be paid pursuant to an allocation formula which treats all Class Members equally, based on the workweeks they worked for Defendants, and the hours worked. *Id*. ¶ 46(a)(iv)-(vi). They will receive a pro rata share of

tip disgorgement based on pay periods worked ($31.98 per pay period between March 23, 2018[2] and December 31, 2022, equally divided between wage payment and payment for liquidated damages), as well as a pro rata share of tip credit based on hours paid ($1.51 per hour worked, plus an equal amount in liquidated damages, as to hours worked in the four-year statute of limitations; and $1.51 per hours worked, including liquidated damages, as to hours worked in the fifth year of the statute of limitations, as no "willful" violation has yet been proven and thus this claim bears additional hurdles to recovery).

### F.   Attorneys' Fees and Litigation Costs.

Plaintiff's counsel will apply for thirty three and one-third percent (33 1/3%) of the first $1,700,000 of the Fund  as attorneys' fees and costs ($566,666,67).[3] *Id.* ¶ 43. Plaintiff's counsel is

---

[2] The FLSA was amended effective March 23, 2018, by the Consolidated Appropriations Act ("CAA") to clearly provide that tip disgorgement is an awardable damage for a claim of improper tip sharing. Pub. L. 115-141, Div. S, Title XII, § 1201(a), Mar. 23, 2018, 132 Stat. 1148. Several courts have found that the amendment did not apply retroactively, and have applied such reasoning to deny claims for improper tip retention prior to the CAA's effective date. *See, e.g., Rodriguez v. City Buffet Mongolian Barbeque, Inc.*, No. 8:18-CV-2745-T-60CPT, 2020 WL 2476043, at *5 (M.D. Fla. Apr. 22, 2020), *report and recommendation adopted*, No. 8:18-CV-2745-T-60CPT, 2020 WL 2473452 (M.D. Fla. May 13, 2020).

[3] This is a within the range of typical fee award in a common fund case. *See, e.g., Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee… which is one-third of the settlement fund… is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases."); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012)("One-third of the recovery is considered standard in a contingency fee agreement."); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("Class Counsel's request for 33 1/3% of the fund is reasonable and 'consistent with the norms of class litigation…' ") (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)); *Hosier v. Mattress Firm, Inc.*, 2012 WL 2813960, at *4 (M.D. Fla. June 8, 2012) (approving a common fund FLSA settlement which provided 30% of the common fund for attorneys' fees and costs); *Morefield v. NoteWorld, LLC*, 2012 WL 1355573 (S.D. Ga. April 18, 2012) (class settlement approved with 33 1/3 of the common fund payable as attorneys' fees); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747, at *6 (M.D. Fla.   Dec. 29, 2011)(approving class settlement with one-third of maximum common fund apportioned as attorneys fees); *Gutter v. E.I. DuPont De Nemours & Co.,* No. 1:95–cv–02152–ASG, D.E. 626 at 7 (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement

not seeking fees out of the portion of the settlement which was calculated to cover unpaid overtime premiums or penalties thereon. *Id.* In addition, Plaintiff's counsel is covering the costs of claims administration from the attorneys' fees awarded. *Id.* ¶ 45. Plaintiffs' counsel will file a formal motion for approval of fees and costs along with their motion for final approval of the settlement. *See* Fed. R. Civ. P. 23(h) & 54(d)(2).

**G.   General Release Payment.**

Separate from the Fund, the Parties negotiated, and Plaintiff will receive, a payment in exchange for a general release of claims. *Id.* ¶ 44.  In approving such releases, "other jurists have approved non-cash concessions in FLSA settlement agreements where they have been negotiated for separate consideration or where there is a reciprocal agreement that benefits all parties." *Alves v. B&W Paving Contractors of Fla. et al.,* No. 2:17-cv-00664-JES-MRM, D.E. 27, at 00. 5-6 (M.D. Fla. Mar. 22, 2019) *report and recommendation adopted*, No. 2:17-cv-00664-JES-MRM, D.E. 28 (M.D. Fla. April 8, 2019) (citing *Bell v. James C. Hall, Inc.*, No. 6:16-cv-218-Orl-41TBS, 2016 WL 5339706, at *3 (M.D. Fla. Aug. 16, 2016), *report and recommendation adopted*, No. 6:16-cv-218-Orl-41TBS, 2016 WL 5146318, at *1 (M.D. Fla. Sept. 21, 2016); *Buntin v. Square Foot Mgmt. Co., LLC*, No. 6:14-CV-1394-ORL-37, 2015 WL 3407866, at *3 (M.D. Fla. May 27, 2015)); *see also Patton v. Bru's Room Sports Grill of Deerfield Beach, LLC*, No. 17-61475-CIV, 2018 WL 1898110, at *2 (S.D. Fla. Jan. 18, 2018), *report and recommendation adopted*, No. 17-61475-CIV, 2018 WL 1875623 (S.D. Fla. Jan. 22, 2018)

---

Fund as attorneys' fees ($1,201,728.42) because they expended significant time and resources on a purely contingent basis under the common fund theory); *In re Terazosin Hydrochloride Antitrust Litig.,* No. 1:99–md–01317–PAS, Doc. No. 1557 at 8–10 (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis).

(approving general release in FLSA case);[4] *Stamey v. JKW Maint. Corp.,* No. 12-61557-CIV, 2013 WL 12383486, at *2 (S.D. Fla. Apr. 15, 2013), *report and recommendation adopted*, No. 12-61557-CV, 2013 WL 12383487 (S.D. Fla. May 24, 2013) (approving general release).

### H. Change in Policy

As part of the Settlement, Defendants formally agree to amend their policies, and to cease any requirement that servers or bartenders share tips with any individual who is classified as a manager at any time. **Exh. A**, ¶ 62. Defendants further commit to pay overtime premiums for all hours over forty in a workweek. *Id.*

## III. Class Action Settlement Procedure

Courts have established a defined procedure and specific criteria for settlement approval in class action settlements that include three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2. Dissemination of mailed and/or published notice of settlement to all affected class members; and

3. A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") §§ 11.22 *et seq.* (4th ed. 2002); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 688 (S.D. Fla. 2014) (discussing steps), *appeal dismissed* (Oct. 15, 2014); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *1 (E.D.N.Y. Jan. 20, 2010). This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of

---

[4] While the Report and Recommendation does not note that the release approved was a general release, Judge Cooke's Order makes clear that the approved release is a general release.

class interests.

With this motion, Plaintiffs request that the Court take the first step – granting preliminary approval of the Settlement Agreement, certifying the FLSA collective for settlement purposes, and approving the proposed Notice and authorizing the claims administrator to send it according to the following schedule:

1. Within ten business days of the date this motion is granted, Defendants will provide the Claims Administrator with the names and contact information for all class members.  **Exh. A** ¶ 51.

2. Within ten business days thereafter, the Claims Administrator will mail the Notice to the Class.  Within two business days thereafter, Defendants will post the Notice in a prominent place in each of the three locations. *Id*.

3. Class members will have 60 days after the date the Notice is mailed, emailed or texted to opt out of or object ("Notice Period"). *Id*., ¶ 52.

4. A final fairness hearing will be held as soon as is convenient for the Court, at least 130 days after Preliminary Approval is granted.

5. Plaintiffs will file a Motion for Final Settlement Approval no later than ten days before the fairness hearing. *Id.* ¶ 56.

6. After the fairness hearing, if the Court grants Plaintiffs' Motion for Final Settlement Approval, the Court will issue a Final Order and Judgment. The "Effective Date" of the settlement will be the day after the Court enters its Final Order and Judgment. *Id*. ¶ 10.

7. Defendants will pay the total amount of Participating and/or Authorized Class Members' claims, as well as the general releasee payment to Plaintiff, within fourteen days of the Effective Date. *Id*. ¶ 47.

8. Class Counsel's fees and costs will be paid to the administrator such that they are received no later than December 15, 2023.  *Id*. ¶ 47.

## **ARGUMENT**

**I.     The Rule 23 Settlement Class Satisfies the Requirements of FRCP 23.**

"Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing

lawsuits." *In re Nissan Motor Corp. Antitrust Litiq.,* 552 F.2d 1088, 1105 (5th Cir.1977). Before

a settlement may be approved, however, certain prerequisites must be established. First, the Court

must certify the settlement class. Fed.R.Civ.P. 23(c). Second, the Court must determine

preliminarily whether the settlement is fair and adequate. *See In re Checking Account Overdraft

Litiq.,* 2011 WL 5873389, at *6 (S.D. Fla. Nov. 22, 2011); Fed.R.Civ.P. 23(e)(2), (e)(1).

To certify a class for settlement purposes the Court must determine whether the

prescriptions of Federal Rule of Civil Procedure 23 are satisfied. *See, e.g., Morefield v. NoteWorld,

LLC*, 2012 WL 1355573, at *2 (S.D. Ga. April 18, 2012). Specifically, certification requires that

each of the four factors set out in Rule 23(a) are satisfied, along with at least one of the conditions

under Rule 23(b). *See id.* Here, the settlement class satisfies the requisite Rule 23 factors detailed

below, and should be certified.[5]

## A.    <u>Numerosity</u>.

Here, there are 325 members of the proposed settlement class. Thus, the Rule 23(a)(1)

numerosity requirement is met. *See Kilgo v. Bowman Trans.,* 789 F.2d 859, 878 (11th Cir. 1986)

(numerosity satisfied where plaintiffs identified at least 31 class members).

## B.    <u>Commonality</u>.

The threshold for commonality under Rule 23(a)(2) is not high. "[C]ommonality requires

---

[5] This is not an issue of first impression. Rather federal courts throughout Florida routinely grant class certification of wage and hour claims under Florida state law. *See, e.g., Kubiak v. S.W. Cowboy, Inc.,* 2014 WL 2625181 (M.D. Fla. June 12, 2014)(certifying opt-out Rule 23 class FLMWA claims); *Lopez v. Hayes Robertson Group, Inc.,* 2013 WL 10561294 (S.D. Fla. Sept. 23, 2013)(certifying opt-out Rule 23 class of FMWA claims regarding allegations of an illegal tip pool); *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 280 F.R.D. 640 (M.D. Fla. 2012)(Moody, J.) (certifying Florida state wage and hour claims); *Rosario-Guerrro v. Orange Blossom Harvesting*, 265 F.R.D. 619 (M.D. Fla. 2010)(Steele, J.)(same); *Napoles-Arcila v. Pero Family Farms, LLC*, 2009 WL 1585970 (S.D. Fla. June 4, 2009)(same); *Mesa v. Ag-Mart Produce, Inc*., 2008 WL 2790224 (M.D. Fla. July 18, 2008)(Howard, J.)(same).

that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Industries, Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks omitted); *see also Fabricant v. Sears Roebuck,* 202 F.R.D. 310, 313 (S.D. Fla. 2001) (same). Here, the commonality requirement is satisfied because there are multiple questions of law and fact that center on Defendants' class-wide pay policies and practices; specifically, the alleged failure to pay proper overtime premiums for hours over forty in a workweek, and requiring tip-sharing with individuals alleged to be managers. *See* D.E. 30 at ¶ 76.

### C.   **Typicality**.

Plaintiff's claims are typical of the settlement class for purposes of this settlement because they concern the same alleged pay policies and practices of Defendants, arise from the same legal theories, and allege the same types of harm and entitlement to relief. *See* D.E. 30 at ¶ 77. Therefore, Rule 23(a)(3) is satisfied. *See Komberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir.2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").

### D.   **Adequacy**.

Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representative has interests antagonistic to the settlement class; and (2) whether the proposed class counsel has the competence to undertake the litigation at issue. *See Fabricant,* 202 F.R.D. at 314. Rule 23(a)(4) is satisfied here because there are no conflicts of interest between Plaintiff and the Class Members, and Plaintiff has retained competent counsel to represent her and the settlement class. *See generally* Declaration of Angeli Murthy ("Murthy Decl."), attached as **Exhibit C**. Class Counsel here

regularly engages in wage and hour class litigation and other complex litigation similar to the present Litigation, and has dedicated substantial resources to the prosecution of the Action. *Id.* at ¶¶ 2, 5, 6.  Moreover, the Plaintiff and Class Counsel have vigorously and competently represented the settlement Class Members' interests in the Litigation. *See Lyons v. Georgia–Pacific Corp. Salaried Employees Ret. Plan,* 221 F.3d 1235, 1253 (11th Cir. 2000).

      **E.**     **Predominance and Superiority.**

Rule 23(b)(3) is satisfied for settlement purposes, as well, because the common legal and alleged factual issues here predominate over individualized issues, and resolution of the common issues for 325 settlement Class Members in a single, coordinated proceeding is superior to 325 individual lawsuits addressing the same legal and factual issues.  With respect to predominance, Rule 23(b)(3) requires that "[c]ommon issues of fact and law ... ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs, Inc.,* 601 F.3d 1159, 1170 (11th Cir.2010) (internal quotation marks omitted). Here, the predominance requirement is satisfied for settlement purposes because common questions present a significant aspect of the case and can be resolved for all settlement Class Members in a single common judgment. *See In re Checking Account Overdraft Litigation,* 2012 WL 4173458, at *3 (S.D. Fla. Sept. 19, 2012).

In sum, all of Rule 23's requirements are met for the purposes of certifying a settlement class.  Thus, the Court should preliminarily certify the settlement class.

**II.**    **Preliminary Approval of the Class Settlement Is Appropriate**

The law favors compromise and settlement of class action suits. *See In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992) (noting that "public policy strongly favors the pretrial

settlement of class action lawsuits."); *Newberg* § 11.25 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Leverso v. SouthTrust Bank of Ala.,* 18 F.3d 1527, 1531 (11th Cir. 1994).  In exercising their discretion, courts should give "proper deference to the private consensual decision of the parties." *Torres v. Gristede's Operating Corp.*, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (internal quotation marks omitted).

At the preliminary approval stage, the Court's task is to evaluate whether the settlement is within the "range of reasonableness." 4 Newberg § 11.26. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.,* 2010 WL 2401149, at *2 (S.D. Fla. Jun.15, 2010). Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See Manual for Complex Litigation,* Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Newberg* § 11.25.  A proposed settlement should be preliminarily approved if it "is 'within the range of possible approval' or, in other words, [if] there is 'probable cause' to notify the class of the proposed settlement." *Fresco v. Auto Data Direct, Inc*., 2007 WL 2330895, at *5 (S.D. Fla. May 14, 2007)(quoting *Armstrong v. Board of School Directors,* 616 F.2d 305, 312 (7th Cir.1980)); *see Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does

not disclose grounds to doubt its fairness... and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members); *Danieli v. IBM*, 2009 WL 6583144, at *4 (S.D.N.Y. Nov. 16, 2009) (granting preliminary approval where settlement "ha[d] no obvious defects" and proposed allocation plan was "rationally related to the relative strengths and weaknesses of the respective claims asserted").

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citation omitted). "[A] court, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Canupp v. Liberty Behavioral Healthcare, Corp.,* 447 Fed. Appx. 976, 2011 WL 6003986 (11th Cir. Dec. 11, 2011)(quoting *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)).

The first step in the settlement process simply allows notice to issue to the class and for class members to object or opt out of the settlement.  After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input.

A. <u>**The Settlement Is Fair, Reasonable, and Adequate.**</u>

In evaluating a class action settlement, courts in the Eleventh Circuit consider the six factors set forth in *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984).  Although the Court need not evaluate the *Bennett* factors in order to conduct its initial evaluation of the settlement, it may be useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Bennett* factors are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *See id.*

Here, all of the *Bennett* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

### 1.  **The Likelihood of Success at Trial.**

Although Plaintiff believes her case is strong, it is not without risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) (citation omitted).

A trial on the merits would involve risk as to both liability and damages. Defendants have asserted numerous substantive defenses. For example, although Plaintiffs were confident that they could show that the "service bartenders" who collected a share of server and bartender tips were, in fact, managers not authorized to share in same, Defendants challenged whether the individuals at issue qualified as "managers" when they were working in the role of "service bartender" as other managers were always scheduled to be on duty on those shifts.  Moreover, Defendants contended that the majority of individuals broadly entitled "managers" were in actuality neither a managers

or supervisors as those terms are utilized by the FLSA. Also, Defendants disputed that periodic improper "tip sharing" would result in a universal forfeiture of Defendants' ability to utilize a tip credit across the board. In addition, according to Defendants, the "service bartenders" were completely relieved of any managerial role during the time they performed work for which they received a portion of tips.  If successful, and the employees at issue were held to not be "managers" within the meaning of the FLSA for purposes of Section 203(m), Defendants' arguments could have reduced or eliminated the alleged damages related to the tip-credit and tip disgorgement. *See* 29 U.S.C. § 203(m)(2)(B) (specifying that a violation occurs only when a "manager" or "supervisor" shares in employee tips).

Defendants further argued that a four-year, and not a five-year statute of limitations would apply to the FMWA claims, as their violation was not "willful" within the meaning of the FLSA (the definitions of which are incorporated into the FMWA). If Defendants prevailed on this defense, individuals who worked between October 4, 2017 and October 3, 2018, would receive no recovery.  While the formula applied to these claims takes this additional risk into account, it is fair and reasonable, given that there was a possibility of zero recovery for such workweeks.

Defendants additionally contend that Plaintiffs' Florida state law claims also suffer from procedural infirmities because Plaintiffs failed to comply with Fla. Stat. § 448.110(6), which requires a claimant, prior to filing suit under the Florida Minimum Wage Act, to first serve on the proposed defendant a detailed itemization of the damages sought and provide the proposed defendant with the requisite statutory period in which to voluntarily remit any wages owed.

As to hours over eighty in a bi-weekly period, Defendants claimed that they paid proper overtime on those hours.  If further discovery supported this defense, then all hours over eighty would not have received any additional compensation, as opposed to the 50% overtime premium

payment, plus liquidated damages, negotiated in this resolution.

While Plaintiff believes she would ultimately have defeated each of Defendants' aforementioned arguments, this would require significant factual development and favorable outcomes at trial and on appeal, all of which is inherently uncertain and lengthy. The proposed settlement alleviates this uncertainty. This factor weighs in favor of preliminary approval.

Notably, because there was no dispute as to whether hours over forty, but under eighty, required additional payment of overtime premiums, those claims have not been compromised to any degree, and will be paid in-full, plus an equal amount for liquidated damages, and no petition for attorneys' fees will apply to that amount.  These amounts will be paid regardless of whether a Class Member files a claim form. There was no question as to what the result of this claim would be at trial, and thus no compromise was appropriate. To the extent there is any question about the hours, the extrapolated calculations are being performed by Plaintiff's data expert, and is what would be presented to a jury as to damages.  This, too, weighs in favor of approval.

### 2.   <u>Range of Possible Recovery and Range at Which Settlement is Fair</u>.

The relief sought in the settlement is reasonable and within the range of remedies permitted by law.  Under the settlement, each class member is receiving a substantial proportion of his/her alleged minimum wage/overtime deficiency.  "While Class Members' damages could exceed the amount provided in the Settlement, the Plaintiffs have no guarantee they will prevail."  *Waters v. Cook's Pest Control, Inc*., 2012 WL 2923542, at *13 (N.D. Ala. July 17, 2012); *see also  Behrens v. Wometco Enterprises, Inc*., 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *In re: Newbridge Networks Securities Litigation*, 1998 WL 765724, at *2 (D.D.C.

October 23, 1998) ("an agreement that secures roughly six to twelve percent of a *potential* recovery ... seems to be within the targeted range of reasonableness").

As stated above, all undisputed overtime owed is being paid in-full, with full liquidated damages, and no reduction for fees or costs, to all Class Members to whom such sums are owed. Where the amount of the overtime is disputed, because Defendants claim that they paid for overtime hours over eighty in a pay period, 50% of the allegedly owed overtime premium will be paid, and an equal amount for liquidated damages.

As to the remaining claims, even for a five-year statute of limitations, the total settlement of $1,700,000.00 represents **over 100% of the wages allegedly owed**, and over 66% of the total recoverable amount even if potential penalties are included.[6] Given that no "willful" violation had yet been proven, it is also useful to evaluate that, for a four-year statute of limitations, the settlement again represents **over 100%** of wages allegedly owed, and **81%** of the total recoverable amount including potential penalties. Indeed, even considering the over $1,100,000 the class will receive after payment of fees, said amount constitutes a minimum of 43% (of full wages and liquidated damages on a full five-year statute of limitations applicable to willful violations) and 100% (of actual wages owed on a four-year statute of limitations) of the potential damages set forth above. Such a recovery represents an excellent value when viewed against the pertinent litigation risks.

Finally, the Court should consider that Defendants are a family-owned three-location restaurant, which represented that it may not have the financial wherewithal to sustain prolonged

---

[6] It is appropriate to evaluate the fairness of the settlement amount including attorneys' fees, because attorneys' fees are part of a plaintiff's remedy for these claims. *See Evans v. Jeff D.,* 475 U.S. 717, 731–32, (1986) (noting that attorneys' fees do not belong to the attorney but are instead part of the plaintiff's remedial arsenal).

litigation and/or a larger judgment. If this litigation were to put Defendants out of business, none of the Class Members would receive anything for their claims.

When the Settlement here is taken as a whole, the relief proposed is fair, adequate, and reasonable when compared to the range of possible recovery in this action.

### 3.  <u>Litigation Through Trial Would Be Complex, Costly, and Long</u>.

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 174. This case is no exception, with approximately 325 Rule 23 class members and claims under federal and state law.

Although written discovery had already taken place, additional discovery would be required to establish liability and damages, including depositions of class members and Defendants, and Defendants' employees and managers. Further, Defendants would have sought to decertify any class or collective certified, even in the event that certification were granted.

In addition, the parties likely would have filed cross-motions for summary judgment on the legal issues regarding the legality of Defendants' challenged practice of requiring sharing of tips with individuals classified as managers and service bartenders, as well as whether they paid proper overtime for hours over eighty. If the Court denied the motions, a trial would be necessary to determine whether Plaintiffs and the Class Members were paid in compliance with the FLSA, and FMWA. Preparing for and putting on evidence at such a trial, even using representative testimony as to the nearly 350 Class Members, would consume tremendous amounts of time and resources and demand substantial judicial resources. Any judgment would then be subject to

appeal.  The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the third *Bennett* factor weighs in favor of preliminary approval.

    **4.**   **The Reaction to the Settlement Has Been Positive.**

Although notice of the settlement has not yet issued to the class, the named-Plaintiff has expressed her approval of the settlement by signing the Settlement Agreement. After notice issues and Class Members weigh in, the Court can more fully analyze this factor.

    **5.**   **Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly.**

The parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement... but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted). The parties' discovery here meets this standard. As discussed above, Plaintiff served multiple sets of comprehensive discovery, and Defendants produced voluminous documents pertaining to their corporate policies, payroll records, and workweek information. In addition, Plaintiff's counsel engaged a forensic accounting expert to analyze the data both prior to and after mediation.

Based on these circumstances, the Parties were well equipped to evaluate the strengths and weaknesses of the case. *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information regarding the defendant's time and pay practices and where counsels' negotiations, while

"cooperative," had "been in no way collusive"); *see also Khait*, 2010 WL 2025106, at *4-5 (approving settlement where *inter alia* the parties exchanged payroll and time data and policies and procedures). This factor also weighs in favor of preliminary approval.

### III.   Approval of the Collective Settlement is Also Appropriate[7]

Certification of the collective is appropriate for the same reasons identified above with respect to class certification. When parties settle FLSA claims prior to final certification of an FLSA collective action, the Court must examine such certification by determining whether the class members are "similarly situated." *Hosier v. Mattress Firm, Inc.,* 2012 WL 2813960, *2-3 (M.D. Fla. Jun. 8, 2012) (citing cases).  The Court should consider the "(l) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations[.]" *Id.* (*quoting Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008)).

Here, all class members held the same job, performed the same primary job duty of serving food and drink to Defendants' customers, and their claims are based on the same legal theory. As explained above, these claims are subject to common proof, and Defendants have asserted common defenses to all of the claims.  They are "similarly situated" for purposes of settlement**.**

Similar to Rule 23, FLSA settlements require evaluation for fairness and reasonableness. Proposed settlements of FLSA claims require approval because private settlements will not effectuate a valid release. *See Lynn's Food Stores, Inc. v. U.S.*, 679 F. 2d 1350, 1354 (11th Cir. 1982). The inquiry as to the fairness of an FLSA settlement arising from a private enforcement action is two-staged. First, the Court must be satisfied that the settlement was the product of

---

[7] Plaintiff also notes that she filed a fulsome motion for collective certification, which Defendants did not oppose.  D.E.s 34 and 41.

contested claims. Second, the Court must inquire as to whether the settlement involves a fair and reasonable resolution of a bona fide dispute between the parties over FLSA coverage or wages. If the proposed settlement reflects a reasonable compromise over contested issues, the Court may approve the settlement to promote the policy of encouraging settlement of litigation. *Lynn's Food Stores*, 679 F. 2d at 1354. The parties' settlement should be approved based on the contested nature of this litigation and the quality of the settlement. Plaintiff respectfully submits that, for the reasons set forth above with respect to the Rule 23 analysis, the settlement is also fair and reasonable for purposes of the FLSA.

### IV.   **M&M should be appointed Interim Class Counsel**.

Where, as here, a class action lawsuit is settled prior to class certification, the Court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." *See* Fed. R. Civ. P. 23(g)(3). Then, at the final approval stage, these lawyers can seek to be appointed class counsel in conjunction with the certification of the settlement class. *See id.* at 23(g)(1).

Here, M&M respectfully asks the Court to appoint it interim class counsel based on its experience litigating class action lawsuits on behalf of workers. *See generally* Murthy Decl., **Exh. C**. As detailed more fully therein, undersigned counsel is Board Certified by the Florida Bar as an expert in Labor and Employment Law, has practiced exclusively in the field of employment law for seventeen of her nineteen years of practice, has been appointed class counsel in many similar actions, and has the experience and resources to effectively serve the class in this matter. *Id.* at ¶¶5-7.

### V.   **The Proposed Notice Is Appropriate.**

The contents of the proposed Notice, which is attached as **Exhibit B**, fully comply with due process, Federal Rule of Civil Procedure 23 and Section 216(b). Pursuant to Rule 23(c)(2)(B),

the notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Notice satisfies each of these requirements. It also explains the allocation formula, the basis on which each Class Member's award was determined, and the allocation of attorneys' fees and costs, and will provide specific information regarding the date, time, and place of the final approval hearing and how to object to or exclude oneself from the settlement. This information is adequate to put class members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B).

The Settlement Agreement provides that the Claims Administrator will mail the Notices to the last known address of each class member within 20 business days of the Court's preliminary approval order. **Exh. A.** ¶ 51. The Claims Administrator will take all reasonable steps to obtain the correct address of any Class Members for whom notices are returned as undeliverable. *Id*. Class Members will have sixty (60) days to opt out of or object to the settlement. *Id.* ¶ 52. Within 24 days of the Effective Date of the settlement, the Claims Administrator will mail Class Members their initial payments. *Id.* ¶ 47.

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court preliminarily approve the settlement, conditionally certify the settlement class and collectivee, appoint Plaintiff's counsel as Class Counsel, appoint Plaintiff as Class Representative, approve the Notice, and enter the Proposed Order submitted with this Motion.

## <u>CERTIFICATE OF GOOD FAITH</u>

Pursuant to S.D. Fla. L. R. 7.1(a)(3), Plaintiff's counsel conferred with Defendants' counsel

regarding this Motion, and is authorized to represent that Defendants do not oppose.

Respectfully submitted this 24th day of February, 2023.

**<u>/s/</u> ANGELI MURTHY**
ANGELI MURTHY, ESQ., B.C.S.
Florida Bar No. 088758
MORGAN & MORGAN, P.A.
8151 Peters Road, Ste. 4000
Plantation, Florida 33324
Telephone: (954) 318-0268
Facsimile:  (954) 333-3515
E-mail: Amurthy@forthepeople.com

*Trial Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 24th day of February, 2023, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which I understand will send

a notice of electronic filing to all counsel of record..

/s/ ANGELI MURTHY
Angeli Murthy, Esquire