**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

LAUREN PEOPLES, for herself and on behalf
of those similarly situated,

      Plaintiff,

                                    Case No.:   2:22-cv-14345-DMM

vs.

TURTLEFTPIERCE, LLC, a Florida Limited
Liability Company, d/b/a THIRSTY TURTLE
SEAGRILL, PANHANDLERS, INC., a
Florida Profit Corporation, d/b/a THIRSTY
TURTLE SEAGRILL, TURTLE SPORT,
INC., a Florida Profit Corporation, d/b/a
THIRSTY TURTLE SEAGRILL, TURTLE
PARTNERS, LLC, a Florida Limited Liability
Company, d/b/a THIRSTY TURTLE
SEAGRILL.

      Defendants.

_____/

**UNOPPOSED MOTION FOR FINAL APPROVAL OF**
**CLASS AND COLLECTIVE ACTION SETTLEMENT**
**<u>AND MEMORANDUM IN SUPPORT THEREOF</u>**

**<u>INTRODUCTION</u>**

Plaintiff, Lauren Peoples, for herself and on behalf of the preliminarily certified class in this matter, moves this Court, pursuant to Fed. R. Civ. P. 23, to enter an Order finally approving the Parties' Settlement Agreement[1] and certify for settlement purposes a class as set forth below. Counsel for the Parties will appear before the Court on June 29, 2023, for the Fairness Hearing.

This Court should grant final approval of the Settlement Agreement. The Settlement Agreement is fair, reasonable, and adequate, as is amply demonstrated by the fact that no class member has objected to the Settlement and only two class members opted out. The Settlement should also be approved because it was the product of arm's-length negotiations by experienced counsel. The Settlement was only reached after service of multiple sets of formal written discovery; fulsome exchange of pay and time records; motions for class and collective certification; and a full day mediation before an experienced wage and hour class action mediator. Plaintiff therefore seeks, without opposition, entry of an Order: (1) Certifying this Action and Settlement Class as an FLSA collective action under 29 U.S.C. § 216(b) and a class action under FED. R. Civ. P. 23(a) and (b)(3) for purposes of settlement only; (2) Finding dissemination of the Settlement Notice met the requirements of due process; (3) Approving the Settlement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions; (4) Approving Class Counsel's motion for attorneys' fees and expenses; (5) Approving the separate payment for a general release to Named Plaintiff, apart from the Settlement Fund; (6) Directing that the Settlement Fund be distributed in accordance with the terms of this Settlement Agreement; (7) Permanently enjoining all Settlement Class Members (other than those who filed timely and valid Exclusion Letters) from prosecuting against the Released Parties any and all of the Participating Class Members' Released Claims; (8) Permanently enjoining the Class Representative from prosecuting against the Released Parties any and all of the Class Representative's Released Claims; (9) Dismissing the Action with prejudice and in full and final discharge of any and all Participating Class Members' Released Claims; and (10) Retaining continuing jurisdiction of the Court over this Action through December 20, 2023, solely for the purpose of resolving issues related to payment under the terms of this Agreement.

---

[1] Capitalized terms in this document are defined consistent with the Settlement Agreement.

I.      **Factual and Procedural Background**

   A.      **Complaint, Factual Allegations, and Defenses.**

Plaintiff, a former bartender and server at one of Defendants' three restaurant locations in Palm Beach and St. Lucie counties, commenced this case by filing her Complaint against Defendants on October 4, 2022, and subsequently filed an Amended Complaint on December 28, 2022.  D.E. 1, 30.  Plaintiff alleged that Defendants denied her and other servers and bartenders proper minimum wage compensation in violation of the Florida Minimum Wage Act ("FMWA") and Fair Labor Standards Act ("FLSA"), as well as proper overtime compensation under the FLSA. D.E. 30 ¶¶ 6, 42.  Specifically, Plaintiff alleged that Defendants uniformly failed to pay Plaintiff and the Class/Collective full and proper minimum wages for their work, due to their policy of requiring the sharing of tips with management. D.E. 30 ¶¶30-34.  Plaintiff alleged that these improperly retained tips created a minimum wage shortfall, and also made Defendants ineligible to claim any tip credit, such that Defendants owe the Class the full minimum wage in actual wages for each hour worked, rather than the lower tipped minimum wage paid. *Id.* ¶ 35; *See* 29 U.S.C. § 203(m). Thus, Plaintiff claimed that Defendants owe the Class the tip credit taken, and return of tip monies retained by salaried managers.  Plaintiff also alleged that Defendants failed to pay overtime premiums for all overtime hours, and demanded payment same. D.E. 30 ¶ 52.

Defendants asserted numerous substantive defenses. *See* Affidavit of Angeli Murthy ("Murthy Aff."), ¶11. For example, Defendants contended that any purported members of "management" who received tips were working and scheduled as "service bartenders" at the time the tips were received, and thus qualified as tipped employees during those shifts. *Id.* Moreover, Defendants contended that the majority of individuals broadly entitled "managers" were in actuality neither a managers or supervisors as those terms are utilized by the FLSA. *Id.* Also, Defendants disputed that periodic improper "tip sharing" would result in a universal forfeiture of Defendants' ability to utilize a tip credit across the board. *Id.* In addition, according to Defendants, the "service bartenders" were completely relieved of any managerial role during the time they performed work for which they received a portion of tips. *Id.*

Defendants further argued that a four-year, and not a five-year statute of limitations would apply to the FMWA claims, as their violation was not "willful" within the meaning of the FLSA

(the definitions of which are incorporated into the FMWA). *Id.*

Defendants additionally contend that Plaintiff's Florida state law claims suffer from procedural infirmities because Plaintiff failed to comply with Fla. Stat. § 448.110(6), which requires a claimant, prior to filing suit under the Florida Minimum Wage Act, to first serve on the proposed defendant a detailed itemization of the damages sought and provide the proposed defendant with the requisite statutory period in which to voluntarily remit any wages owed. *Id.*

As to hours over eighty in a bi-weekly period, Defendants claimed that they paid proper overtime on those hours. *Id.*

### B.  Class and Collective Certification.

Another server, Hayleigh Bartlett, opted in to the action on January 5, 2023, and the motion for collective certification was filed the same day. D.E. 32, 34.  While Defendants initially indicated that they would oppose Plaintiff's request for conditional certification, they later reconsidered, and the Parties agreed to work cooperatively on the proposed notice to the collective. D.E. 41. Plaintiff also filed a motion for class certification on January 22, 2023 [D.E. 38], which remains pending, and which Defendants have agreed not to oppose for purposes of settlement only. On March 20, 2023, the Court approved Plaintiff's unopposed motion for preliminary certification, preliminarily certified the Class, and directed Notice to issue. D.E. 57, 58.

### C.  Discovery.

Plaintiff served multiple sets of comprehensive formal discovery upon Defendants, and Defendants provided payroll records for all Class Members for the time period from October 4, 2017, to December 31, 2022. Murthy Aff. ¶12.  Class Counsel, along with Martin Williams, CPA/CFF, CFE (a forensic accountant and data analyst that M&M often  retains to analyze timekeeping and payroll data), reviewed thousands of pages of documents in preparation for the mediation process discussed below and the settlement discussions that led to the parties' Settlement Agreement. *Id.* ¶13. These documents included corporate policies, personnel documents, payroll records, time records, employee handbooks, records of cash tips paid to managers scheduled as "service bartender," and schedules and calendars. *Id.*  In addition, Class Counsel spoke extensively with Plaintiff and opt-in Hayleigh Bartlett regarding the records and allegations. *Id.* ¶14. The records Defendants produced showed that the policies of paying

employees the "tip credit" wage, as well as of "tipping out" managers when they were scheduled as service bartenders was uniform at each of the three locations. *Id.* They further showed that where total hours were under eighty in a two week period, Defendants did not pay overtime on hours over forty in a single workweek. *Id.*

Defendants were able to produce payroll records for the entirety of the time period at issue, which contained total hours for each pay period and thus could be used to calculate damages under the FMWA with certainty. *Id.* ¶15. However, Defendants were able to produce time records only for the time period from December 2020 through December 2022. *Id.* ¶16. While these records were not necessary with respect to the minimum wage claims, they were necessary with respect to the overtime calculations under the FLSA. *Id.* As a result, Class Counsel and Plaintiff's expert extrapolated calculations for the remaining time period applicable under the FLSA. *Id.* ¶17.

**D.** **Settlement Negotiations and Mediation.**

On February 2, 2023, the Parties participated in an all-day mediation in Jupiter, Florida, with the assistance of Mediator, Cathleen Scott, of Scott Law Group. *Id.* ¶18. Ms. Scott is Board Certified by the Florida Bar as an expert in Labor and Employment Law, was the president of the Florida Bar's Labor and Employment Section, and is a very knowledgeable and skilled wage and hour class action mediator, with a nationwide practice. *Id.* In the mediation, the Parties exchanged additional information regarding the policies and practices at issue, as well as defenses.  *Id.* ¶19.

As described above, and with Mr. Williams' assistance, Class Counsel analyzed the data and found that if each Class Member had been paid full minimum wage and not shared any tips with "service bartenders" the result would have been additional payments of approximately $1,275,000.00 over the five-year statute of limitations applicable to "willful" violations.  *Id.* ¶20. Including potential penalties for liquidated damages, the maximum exposure to Defendant for the five-year period was approximately $2,550,000.00. *Id.* ¶21. For the four-year statute of limitations applicable to a non-willful violation of the law, Plaintiff calculated the minimum wage and disgorgement exposure at approximately $1,050,000.00. *Id.* With potential penalties for liquidated damages for a four-year statute of limitations, the exposure increased to $2,100,000.00.  *Id.*

After ten hours of mediation, the Parties executed a memorandum of understanding, agreeing to resolve the case for $1,700,000.00, plus an amount to be calculated from Defendants'

time records for owed and potentially owed overtime compensation, plus the costs of mediation. *Id.* ¶22. The memorandum also included a separately negotiated payment to Plaintiff for a general release of claims. *Id.* The Parties filed a notice of settlement the next day. *See* D.E. 44. The memorandum of understanding contemplated that Defendants would share additional timekeeping data to allow Plaintiff to make calculations as to the overtime portion of the claim.

After additional exchange of time record data, data analysis as to the overtime claims, and additional negotiation and conferences, the Parties reduced their agreement to a formal Settlement Agreement and Release. *See* Settlement Agreement and Release, attached as **Exh. A**.

The Parties recognize and acknowledge the benefits of settling this case. Plaintiff believes that the claims asserted in this case have merit and that the evidence developed to date supports the claims. Despite the strength of her case, Plaintiff is mindful of the arguments that will be raised by Defendants' able counsel, an experienced wage and hour litigator. Plaintiff further recognizes and acknowledges the expense and length of time that proceedings necessary to prosecute this matter as a class action against Defendants, post-trial proceedings, and any appeals would take. Class Counsel has taken into account the uncertain outcome and risks of the litigation, as well as the difficulties and delays inherent in such litigation. Class Counsel has, therefore, determined that the Settlement set forth in this Agreement is fair, reasonable and adequate. The Settlement confers substantial benefits upon, and is in the best interests of, the Plaintiff and the Class/Collective.

## II.   Summary of the Settlement Terms

### A.   The Settlement Fund.

Defendants have agreed to create a settlement fund of up to $1,719,924.72 (the "Settlement Fund"). *See* **Exh. A**, ¶ 16. Same will cover payments to Participating Class Members and Court-approved attorneys' fees and costs. *Id.* ¶ 16.

### B.   Payment to Mediator.

Defendants agreed to pay the full cost of the mediation held on February 2, 2023.

### C.    Release.

Class Members who do not opt out of the settlement will release all FMWA claims. *Id.* ¶ 59. In addition to releasing their Florida minimum wage claims, all Class Members who timely submit a claim form will also release their FLSA claims. *Id.*

###   D.   Eligible Class Members.

The Rule 23 class consists of 321 current and former hourly paid bartenders and servers who worked for Defendants at any time between October 4, 2017, and December 31 2022, except for those who opt out. *Id*. ¶¶ 25, 27, 55.

###   E.   Allocation Formula.

All Participating Class Members, **whether or not they submit a claim form**, will receive payment of full wages and liquidated damages for **any** hours over forty in a workweek for which they were undisputedly not paid overtime premiums between December 1, 2020, and December 31, 2022, based on Defendants' records.  *Id*. ¶¶ 46, 46(a)(i)-(iii).  Because time records prior to December 2020 are not available, the Parties agreed to use data from October 2021 to March 2022, and analysis by Plaintiff's data expert, to extrapolate overtime calculations as to potential claims between October 2019 and December 2020, taking into account that in-house restaurant operations were severely reduced during COVID-19 from March 2020 to December 2020.

Defendants maintain that they did pay overtime premiums on hours over 80 in a two-week period.  Thus, class members who worked such hours will receive 50% of the allegedly owed overtime premium for those hours, and equal liquidated damages. *Id*. ¶ 46(a)(ii).

In addition to payment of overtime premiums, plus liquidated damages on those amounts as described above, Class members who timely submit claim forms will be paid pursuant to an allocation formula which treats all Class Members equally, based on the workweeks they worked for Defendants, and the hours worked. *Id*. ¶ 46(a)(iv)-(vi).  They will receive a pro rata share of tip disgorgement based on pay periods worked ($36.168 per pay period between March 23, 2018[2] and December 31, 2022, equally divided between wage payment and payment for liquidated damages), as well as a pro rata share of tip credit based on hours paid ($1.51 per hour worked,

---

[2] The FLSA was amended effective March 23, 2018, by the Consolidated Appropriations Act ("CAA") to clearly provide that tip disgorgement is an awardable damage for a claim of improper tip sharing.  Pub. L. 115-141, Div. S, Title XII, § 1201(a), Mar. 23, 2018, 132 Stat. 1148.  Several courts have found that the amendment did not apply retroactively, and have applied such reasoning to deny claims for improper tip retention prior to the CAA's effective date.  *See, e.g., Rodriguez v. City Buffet Mongolian Barbeque, Inc.*, No. 8:18-CV-2745-T-60CPT, 2020 WL 2476043, at *5 (M.D. Fla. Apr. 22, 2020), *report and recommendation adopted*, No. 8:18-CV-2745-T-60CPT, 2020 WL 2473452 (M.D. Fla. May 13, 2020).

**plus** an equal amount in liquidated damages, as to hours worked in the four-year statute of limitations; and $1.51 per hours worked, including liquidated damages, as to hours worked in the fifth year of the statute of limitations, as no "willful" violation has yet been proven and thus this claim bears additional hurdles to recovery).

### F.   Attorneys' Fees and Litigation Costs.

Class Counsel has filed a motion seeking thirty three and one-third percent (33 1/3%) of the first $1,700,000 of the Settlement Fund as attorneys' fees and costs ($566,666,67).[3] D.E. 59. Class Counsel is not seeking fees out of the portion of the settlement which was calculated to cover unpaid overtime premiums or penalties thereon. *See id.* In addition, Class Counsel is covering the costs of claims administration from the attorneys' fees awarded. *Id.* ¶ 45.

### G.   General Release Payment.

Separate from the Settlement Fund, the Parties negotiated, and Plaintiff will receive, a payment in exchange for a general release of claims. *Id.* ¶ 44. In approving such releases, "other jurists have approved non-cash concessions in FLSA settlement agreements where they have been negotiated for separate consideration or where there is a reciprocal agreement that benefits all parties." *Alves v. B&W Paving Contractors of Fla. et al.,* No. 2:17-cv-00664-JES-MRM, D.E. 27, at 00. 5-6 (M.D. Fla. Mar. 22, 2019) *report and recommendation adopted*, No. 2:17-cv-00664-JES-MRM, D.E. 28 (M.D. Fla. April 8, 2019) (citing *Bell v. James C. Hall, Inc.*, No. 6:16-cv-218-Orl-41TBS, 2016 WL 5339706, at *3 (M.D. Fla. Aug. 16, 2016), *report and recommendation adopted*, No. 6:16-cv-218-Orl-41TBS, 2016 WL 5146318, at *1 (M.D. Fla. Sept. 21, 2016); *Buntin v. Square Foot Mgmt. Co., LLC*, No. 6:14-CV-1394-ORL-37, 2015 WL 3407866, at *3 (M.D. Fla. May 27, 2015); *see also Patton v. Bru's Room Sports Grill of Deerfield Beach, LLC*, No. 17-61475-CIV, 2018 WL 1898110, at *2 (S.D. Fla. Jan. 18, 2018), *report and recommendation adopted*, No. 17-61475-CIV, 2018 WL 1875623 (S.D. Fla. Jan. 22, 2018) (approving general release in FLSA

---

[3] As set forth in Plaintiff's motion for preliminary approval [D.E. 56], and her counsel's fee petition [D.E. 59] is a within the range of typical fee award in a common fund case. *See, e.g., Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee… which is one-third of the settlement fund… is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases.").

case);[4] *Stamey v. JKW Maint. Corp.,* No. 12-61557-CIV, 2013 WL 12383486, at *2 (S.D. Fla. Apr. 15, 2013), *report and recommendation adopted*, No. 12-61557-CV, 2013 WL 12383487 (S.D. Fla. May 24, 2013) (approving general release).

### H. Change in Policy.

As part of the Settlement, Defendants formally agree to amend their policies, and to cease any requirement that servers or bartenders share tips with any individual who is classified as a manager at any time. **Exh. A,** ¶ 62. Defendants further commit to pay overtime premiums for all hours over forty in a workweek. *Id.*

## ARGUMENT

### I. The Settlement Meets the Legal Standards for Class Certification.

Public policy strongly favors the pretrial settlement of class action lawsuits. *In re United States Oil & Gas Litig.*, 967 F2d 489, 493 (11th Cir. 1992) (noting that "public policy strongly favors the pretrial settlement of class action lawsuits."); *Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005) (emphasizing the "strong judicial policy in favor of settlements, particularly in the class action context") (quotation omitted); *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977) ("Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits.")[5]; *see also* Herbert B. Newberg & Alba Conte, Newberg on Class Actions ("Newberg"), § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

To certify a class for settlement purposes the Court must determine whether the prescriptions of Fed. R. Civ. P. 23 are satisfied. *See, e.g., Morefield v. NoteWorld, LLC*, 2012 WL 1355573, at *2 (S.D. Ga. April 18, 2012). Specifically, certification requires that each of the four factors in Rule 23(a) are satisfied, along with at least one of the conditions of Rule 23(b). *See id.* Here, the Class satisfies the Rule 23 factors detailed below, and should be certified.[6]

---

[4] While the Report and Recommendation does not note that the release approved was a general release, Judge Cooke's Order makes clear that the approved release is a general release.
[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.
[6] This is not an issue of first impression. Rather federal courts throughout Florida routinely grant

A. **Numerosity.**

Here, there are 321 members of the proposed settlement class. Thus, the Rule 23(a)(1) numerosity requirement is met. *See Kilgo v. Bowman Trans.,* 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members).

B. **Commonality.**

The threshold for commonality under Rule 23(a)(2) is not high. "[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Industries, Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks omitted); *see also Fabricant v. Sears Roebuck,* 202 F.R.D. 310, 313 (S.D. Fla. 2001) (same). Here, the commonality requirement is satisfied because there are multiple questions of law and fact that center on Defendants' class-wide pay policies and practices; specifically, the alleged failure to pay proper overtime premiums for hours over forty in a workweek, and requiring tip-sharing with individuals alleged to be managers. *See* D.E. 30 ¶ 76.

C. **Typicality.**

Plaintiff's claims are typical of the settlement class for purposes of this settlement because they concern the same alleged pay policies and practices of Defendants, arise from the same legal theories, and allege the same types of harm and entitlement to relief. *See* D.E. 30 ¶ 77. Therefore, Rule 23(a)(3) is satisfied. *See Komberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir.2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").

---

class certification of wage and hour claims under Florida state law. *See, e.g., Kubiak v. S.W. Cowboy, Inc.,* 2014 WL 2625181 (M.D. Fla. June 12, 2014)(certifying opt-out Rule 23 class FLMWA claims); *Lopez v. Hayes Robertson Group, Inc.,* 2013 WL 10561294 (S.D. Fla. Sept. 23, 2013)(certifying opt-out Rule 23 class of FMWA claims regarding allegations of an illegal tip pool); *Garcia-Celestino v. Ruiz Harvesting, Inc.,* 280 F.R.D. 640 (M.D. Fla. 2012)(Moody, J.) (certifying Florida state wage and hour claims); *Rosario-Guerrro v. Orange Blossom Harvesting,* 265 F.R.D. 619 (M.D. Fla. 2010)(Steele, J.)(same); *Napoles-Arcila v. Pero Family Farms, LLC,* 2009 WL 1585970 (S.D. Fla. June 4, 2009)(same); *Mesa v. Ag-Mart Produce, Inc.,* 2008 WL 2790224 (M.D. Fla. July 18, 2008)(Howard, J.)(same).

D.    **Adequacy**.

Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representative has interests antagonistic to the settlement class; and (2) whether the proposed class counsel has the competence to undertake the litigation at issue. *See Fabricant,* 202 F.R.D. at 314. Rule 23(a)(4) is satisfied here because there are no conflicts of interest between Plaintiff and the Class Members, and Plaintiff has retained competent counsel to represent her and the settlement class. *See* Murthy Aff. ¶¶2-10. Class Counsel here regularly engages in wage and hour class litigation and other complex litigation similar to the present Litigation, and has dedicated substantial resources to the prosecution of the Action. *Id.*  Moreover, the Plaintiff and Class Counsel have vigorously and competently represented the settlement Class Members' interests in the Litigation. *See Lyons v. Georgia–Pacific Corp. Salaried Employees Ret. Plan,* 221 F.3d 1235, 1253 (11th Cir. 2000).

E.    **Predominance and Superiority**.

Rule 23(b)(3) is satisfied for settlement purposes, as well, because, as set forth more fully below, the common legal and alleged factual issues here predominate over individualized issues, and resolution of the common issues for 321 settlement Class Members in a single, coordinated proceeding is superior to 321 individual lawsuits addressing the same legal and factual issues.

1.    **Common Questions Of Law And Fact Predominate Over Questions Affecting Only Individual Members Of The Class**

In *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), the Supreme Court noted that the Rule 23(b)(3) predominance inquiry tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." 521 U.S. at 594.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis."  7A Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure*, §1777 (2d ed. 1986).

The Supreme Court has summarized the predominance test as follows:

> The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation- defeating, individual issues." When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be consideredproper under Rule 23(b)(3) even

> though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal citations omitted).

Here, predominance is satisfied because, as discussed with respect to commonality, Plaintiff's pursuit of unpaid wages is based on the same evidentiary record and legal principles as the claims of other Class Members who similarly were not paid for all overtime hours at an overtime rate and were required to participate in a tip pool with managers who were scheduled as "service bartenders." These allegations of a common course of conduct "provide[] the 'single central issue'" required to ensure predomination of common questions over individual issues. *In re Prudential Ins. Sales Practice Litig.*, 962 F. Supp. 450, 511-512 n.45 (D.N.J. 1997) ("*Prudential I*") (collecting cases); *See Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs, Inc.,* 601 F.3d 1159, 1170 (11th Cir.2010) (Rule 23(b)(3) requires that "[c]ommon issues of fact and law ... ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member.") (internal quotation marks omitted); *In re Checking Account Overdraft Litigation,* 2012 WL 4173458, at *3 (S.D. Fla. Sept. 19, 2012) (predominance inquiry determines whether common questions present a significant aspect of the case and can be resolved for all settlement Class Members in a single common judgment.)

### 2. A Class Action Is The Superior Means To Adjudicate The Claims At Issue For Settlement Purposes

Fed. R. Civ. P. 23(b)(3) lists the following factors pertinent to the superiority determination:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

All four of these factors support certification here for settlement purposes.

### a. Most Class Members Have An Insufficient Interest To Justify Individual Lawsuits

Certification permits a class-wide adjudication of the claims of similarly situated claimants

11

when individual prosecution would not be cost-effective.  The Supreme Court has frequently noted the need for aggregate representation through certification to address such claims.  *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  In *Amchem,* the Supreme Court reiterated this clear trend in its jurisprudence:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617 (further citation omitted).

Individual prosecution of the claims at issue would not be cost-effective. The class action mechanism for settlement is meant to afford remedies to claimants who cannot otherwise prosecute their claims in a cost-effective manner.  *General Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 155 (1982). While some of the claims in this matter are more substantial (potential exposure of $30,000-$50,000), the majority are under $10,000.  The overtime claims, in particular are not more than $500 for any Class Member. Moreover, even as to those Class Members with more substantial potential damages, the fees incurred in reaching a judgment in those matters might still eclipse the value of the claims themselves. The claims at issue here are such that class relief is the only realistic alternative to no relief at all, for the vast majority of class members.  *Prudential I*, 962 F. Supp. at 522-23.  This factor supports certification for settlement purposes.

### b. The Extent And Nature Of Other Pending Class Actions Does Not Present Any Impediment To Certification Of This Settlement Class

There are no other pending class actions against Defendants asserting the claims here in dispute.  Therefore, this factor supports settlement class certification.

### c. This Court Is An Appropriate Forum To Resolve The Claims At Issue

There is no question that this Court has subject matter jurisdiction over the claims alleged in this case, has personal jurisdiction over the Parties, and that personal jurisdiction extends to members of the Class under the Due Process Clause because the notice provided in this case was constitutionally sufficient.  *Shutts*, 472 U.S. at 811-812.

### d. Manageability

The Supreme Court confirmed in *Amchem* that the manageability of a class action at trial is

irrelevant in the context of a proposed settlement class, because the proposal is that there be no trial. *Amchem*, 521 U.S. at 620.

In sum, all of Rule 23's requirements are met for the purposes of certifying a settlement class. Thus, the Court should finally certify the class.

## II.  The Proposed Settlement is Fair, Reasonable, and Adequate, and Should be <u>Approved</u>.

Rule 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." While Rule 23(e) does not provide standards or guidelines for settlement approval, it is well-established in this Circuit that "in order to approve a settlement, the district court must find that it 'is fair, adequate and reasonable and is not the product of collusion between the parties.'" *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984) (quoting *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir.1977)).

The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Leverso v. SouthTrust Bank of Ala.,* 18 F.3d 1527, 1531 (11th Cir. 1994).  In exercising their discretion, courts should give "proper deference to the private consensual decision of the parties." *Torres v. Gristede's Operating Corp.*, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (internal quotation marks omitted).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citation omitted). "[A] court, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Canupp v. Liberty Behavioral Healthcare, Corp.,* 447 Fed. Appx. 976, 2011 WL 6003986 (11th Cir. Dec. 11, 2011)(quoting *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)).

### A.  <u>The Settlement Is Fair, Reasonable, and Adequate</u>.

In evaluating a class action settlement, courts in the Eleventh Circuit consider the six

factors set forth in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

The *Bennett* factors are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *See id.*

Here, all of the *Bennett* factors weigh in favor of approval of the Settlement Agreement. As such, the Court should grant this unopposed motion for final approval.

### 1. __The Likelihood of Success at Trial.__

Although Plaintiff believes her case is strong, it is not without risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) (citation omitted).

A trial on the merits would involve risk as to both liability and damages. Defendants have asserted numerous substantive defenses. For example, although Plaintiff was confident that she could show that the "service bartenders" who collected a share tips were, in fact, managers not authorized to share in same, Defendants challenge whether those individuals qualified as "managers" when they were working as "service bartenders," as other managers were always scheduled to be on duty on those shifts.  Moreover, Defendants contend that most individuals broadly entitled "managers" were in actuality neither a managers or supervisors as those terms are utilized by the FLSA. Also, Defendants disputed that periodic improper "tip sharing" would result in a universal forfeiture of Defendants' ability to utilize a tip credit across the board.

In addition, according to Defendants, the "service bartenders" were completely relieved of any managerial role during the time they performed work for which they received a portion of tips. If successful, and the employees at issue were held to not be "managers" within the meaning of

the FLSA for purposes of Section 203(m), an issue which would have been hotly litigated, Defendants' arguments could have reduced or eliminated the alleged damages related to the tip-credit and tip disgorgement. *See* 29 U.S.C. § 203(m)(2)(B) (specifying that a violation occurs only when a "manager" or "supervisor" shares in employee tips).

Defendants further argue that a four-year, and not a five-year statute of limitations would apply to the FMWA claims, as their violation was not "willful" within the meaning of the FLSA (the definitions of which are incorporated into the FMWA). Plaintiff had yet to prove a knowing or reckless violation of the law as to the claims at issue. If Defendants prevailed on this defense, individuals who worked between October 4, 2017 and October 3, 2018, would receive no recovery. While the formula applied to these claims takes this additional risk into account, it is fair and reasonable, given that there was a possibility of zero recovery for such workweeks.

Defendants additionally contend that Plaintiff's Florida state law claims also suffer from procedural infirmities because Plaintiff failed to comply with Fla. Stat. § 448.110(6), which requires a claimant, prior to filing suit under the Florida Minimum Wage Act, to first serve on the proposed defendant a detailed itemization of the damages sought and provide the proposed defendant with the requisite statutory period in which to voluntarily remit any wages owed.

As to hours over eighty in a bi-weekly period, Defendants claim that they paid proper overtime on those hours.  If further discovery supported this defense, then all hours over eighty would not have received any additional compensation, as opposed to the 50% overtime premium payment, plus liquidated damages, negotiated in this resolution.

While Plaintiff believes she would ultimately have defeated each of Defendants' aforementioned arguments, this would require significant factual development and favorable outcomes at trial and on appeal, all of which is inherently uncertain and lengthy. The proposed settlement alleviates this uncertainty. This factor weighs in favor of approval.

Notably, because there was no dispute as to whether hours over forty, but under eighty, required additional payment of overtime premiums, those claims have not been compromised to any degree, and will be paid in-full, plus an equal amount for liquidated damages, and no petition for attorneys' fees will apply to that amount.  These amounts will be paid regardless of whether a Class Member files a claim form. There was no question as to what the result of this claim would

be at trial, and thus no compromise was appropriate. To the extent there is any question about the hours, the extrapolated calculations are being performed by Plaintiff's data expert, and is what would be presented to a jury as damages.  This, too, weighs in favor of approval.

## 2.  Range of Possible Recovery and Range at Which Settlement is Fair.

The relief sought in the settlement is reasonable and within the range of remedies permitted by law.  Under the settlement, each class member is receiving a substantial proportion of his/her alleged minimum wage/overtime deficiency.  "While Class Members' damages could exceed the amount provided in the Settlement, the Plaintiffs have no guarantee they will prevail."  *Waters v. Cook's Pest Control, Inc*., 2012 WL 2923542, at *13 (N.D. Ala. July 17, 2012); *see also  Behrens v. Wometco Enterprises, Inc*., 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *In re: Newbridge Networks Securities Litigation*, 1998 WL 765724, at *2 (D.D.C. October 23, 1998) ("an agreement that secures roughly six to twelve percent of a *potential* recovery ... seems to be within the targeted range of reasonableness").

As stated above, all undisputed overtime owed is being paid in-full, with full liquidated damages, and no reduction for fees or costs, to all Class Members to whom such sums are owed. Where the amount of the overtime is disputed, because Defendants claim that they paid for overtime hours over eighty in a pay period, 50% of the allegedly owed overtime premium will be paid, and an equal amount for liquidated damages.

As to the remaining claims, even for a five-year statute of limitations, the total settlement of $1,700,000.00 represents **over 100% of the wages allegedly owed**, and over 66% of the total recoverable amount even if potential penalties are included.[7] Given that no "willful" violation had yet been proven, it is also useful to evaluate that, for a four-year statute of limitations, the settlement again represents **over 100%** of wages allegedly owed, and **81%** of the total recoverable amount including potential penalties. Indeed, the over $1,100,000 the class can receive after

---

[7] It is appropriate to evaluate the fairness of the settlement amount including attorneys' fees, because attorneys' fees are part of a plaintiff's remedy for these claims. *See Evans v. Jeff D.,* 475 U.S. 717, 731–32, (1986) (noting that attorneys' fees do not belong to the attorney but are instead part of the plaintiff's remedial arsenal).

payment of fees, said amount constitutes a minimum of 43% (of full wages and liquidated damages on a full five-year statute of limitations applicable to willful violations) and over 100% (of actual wages owed on a four-year statute of limitations) of the potential damages set forth above. This recovery represents an excellent value when viewed against the pertinent litigation risks.

Moreover, the Class Members will also receive the ongoing benefit of proper payment of overtime going forward, as well as the change in policy to preclude anyone with manager duties from participating in the tip pool in any capacity.

Finally, the Court should consider that Defendants are a family-owned three-location restaurant, which represented that it may not have the financial wherewithal to sustain prolonged litigation and/or a larger judgment. If this litigation were to put Defendants out of business, none of the Class Members would receive anything for their claims.

When the Settlement here is taken as a whole, the relief proposed is fair, adequate, and reasonable when compared to the range of possible recovery in this action.

**3.   <u>Litigation Through Trial Would Be Complex, Costly, and Long</u>.**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 174. This case is no exception, with approximately 321 Rule 23 class members and claims under federal and state law.

Although written discovery had already taken place, additional discovery would be required to establish liability and damages, including depositions of class members and Defendants, and Defendants' employees and managers. Further, Defendants would have sought to decertify any class or collective certified, even in the event that certification were granted.

In addition, the parties likely would have filed cross-motions for summary judgment on the legal issues regarding the legality of Defendants' challenged practice of requiring sharing of tips with individuals classified as managers and service bartenders, as well as whether they paid proper overtime for hours over eighty. If the Court denied the motions, a trial would be necessary to determine whether Plaintiff and the Class Members were paid in compliance with the FLSA, and

FMWA. Preparing for and putting on evidence at such a trial, even using representative testimony as to the over 320 Class Members, would consume tremendous amounts of time and resources and demand substantial judicial resources. Any judgment would then be subject to appeal. The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the third *Bennett* factor weighs in favor of approval.

### 4.   The Reaction to the Settlement Has Been Positive.

Notice was sent out by first class mail and text message in accordance with the procedures approved by the Court in its Order on the Motion for Preliminary Approval. D.E. 58; Murthy Aff. ¶23. The Notice specifically identified the terms of the Settlement, including the amount sought by Class Counsel for fees and costs, and satisfies the requirements of due process. *Shutts*, 472 U.S. at 812 (procedure in which a "fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to "opt out," satisfies due process.").

 The notice period closes the day after this Motion is filed.  However, as of today's date, no Class Member has objected to the settlement, and only two have opted-out.  *See* Murthy Aff. ¶24. *See Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124, at *12 (S.D. Fla. 2008) ("A low percentage of objections will confirm the reasonableness of a settlement and support its approval.") (citing *Stoetzner v. United States Steel Corp.,* 897 F.2d 115, 118-19 (3d Cir. 1990), wherein fact that only 10% of class members objected to settlement weighed in favor of approval); *Browne v. Am. Honda Motor Co.*, 2010 WL 9499072, at *15 (C.D. Cal. 2010) (where approximately 5% of class members submitted claims and under 1% opted out or objected, "[t]he comparatively low number of opt-outs and objectors indicates that generally, class members favor the proposed settlement and find it fair"); *Briggs v. Hartford Fin. Servs. Grp., Inc.*, 2009 WL 2370061, at *11 (E.D. Pa. July 31, 2009) ("Put otherwise, less than 2.7% of the class opted out. It is therefore fair to infer that a vast majority—over 97%—of the class supports the Agreement.").

### 5.   Discovery Has Advanced Enough to Allow the Parties to Resolve the Case Responsibly.

The parties have completed enough discovery to recommend the settlement for final approval. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir.

2004) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement... but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted). The parties' discovery here meets this standard. As discussed above, Plaintiff served multiple sets of comprehensive discovery, and Defendants produced voluminous documents pertaining to their corporate policies, payroll records, and workweek information. In addition, Class Counsel engaged a forensic accounting expert to analyze the data both prior to and after mediation.

Based on these circumstances, the Parties were well equipped to evaluate the strengths and weaknesses of the case. *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information regarding the defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive"); *see also Khait*, 2010 WL 2025106, at *4-5 (approving settlement where *inter alia* the parties exchanged payroll and time data and policies and procedures). This factor also weighs in favor of approval.

### III.   Approval of the Collective Settlement is Also Appropriate.[8]

Final certification of the collective is appropriate for the same reasons identified above with respect to class certification. When parties settle FLSA claims prior to final certification of an FLSA collective action, the Court must examine such certification by determining whether the class members are "similarly situated." *Hosier v. Mattress Firm, Inc.,* 2012 WL 2813960, *2-3 (M.D. Fla. Jun. 8, 2012) (citing cases).  The Court should consider the "(l) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations[.]" *Id.* (*quoting Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008)).

Here, all class members held the same job, performed the same primary job duty of serving food and drink to Defendants' customers, and their claims are based on the same legal theory. As explained above, these claims are subject to common proof, and Defendants have asserted common

---

[8] Plaintiff also notes that she filed a fulsome motion for collective certification, which Defendants did not oppose.  D.E.s 34 and 41.

defenses to all of the claims.  They are "similarly situated" for purposes of settlement.

Similar to Rule 23, FLSA settlements require evaluation for fairness and reasonableness. Proposed settlements of FLSA claims require approval because private settlements will not effectuate a valid release. *See Lynn's Food Stores, Inc. v. U.S.*, 679 F. 2d 1350, 1354 (11th Cir. 1982). The inquiry as to the fairness of an FLSA settlement arising from a private enforcement action is two-staged. First, the Court must be satisfied that the settlement was the product of contested claims. Second, the Court must inquire as to whether the settlement involves a fair and reasonable resolution of a bona fide dispute between the parties over FLSA coverage or wages. If the proposed settlement reflects a reasonable compromise over contested issues, the Court may approve the settlement to promote the policy of encouraging settlement of litigation. *Lynn's Food Stores*, 679 F. 2d at 1354. The Settlement should be approved based on the contested nature of this litigation and the quality of the Settlement. Plaintiff respectfully submits that, for the reasons set forth above as to the Rule 23 analysis, the Settlement is also fair and reasonable under the FLSA.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court enter the proposed order submitted herewith:

(1) Certifying this Action and Settlement Class as an FLSA collective action under 29 U.S.C. § 216(b) and a class action under FED. R. Civ. P. 23(a) and (b)(3) for purposes of settlement only;

(2) Finding dissemination of the Settlement Notice met the requirements of due process;

(3) Approving the Settlement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

(4) Approving Class Counsel's motion for attorneys' fees and expenses;

(5) Approving the separate payment for a general release to Named Plaintiff, apart from the Settlement Fund;

(6) Directing that the Settlement funds be distributed in accordance with the terms of this Settlement Agreement;

(7) Permanently enjoining all Settlement Class Members (other than those who filed timely and valid Exclusion Letters) from prosecuting against the Released Parties any and all of the Participating Class Members' Released Claims, as those terms are defined in the Settlement Agreement;

(8) Permanently enjoining the Class Representative from prosecuting against the Released Parties any and all of the Class Representative's Released Claims;

(9) Dismissing the Action with prejudice and in full and final discharge of any and all Participating Class Members' Released Claims; and

(10) Retaining continuing jurisdiction of the Court over this Action through December 20, 2023, solely for the purpose of resolving payment issues arising under this Agreement.

## CERTIFICATE OF GOOD FAITH

Pursuant to S.D. Fla. L. R. 7.1(a)(3), Class Counsel conferred with Defendants' counsel regarding this Motion, and is authorized to represent that Defendants do not oppose. Respectfully submitted this 1st day of June, 2023.

/s/ *Angeli Murthy*
Angeli Murthy, Esq., B.C.S.
Florida Bar No. 088758
MORGAN & MORGAN, P.A.
8151 Peters Road, Ste. 4000
Plantation, Florida 33324
Telephone: (954) 318-0268
Facsimile:  (954) 333-3515
E-mail: Amurthy@forthepeople.com

*Trial Counsel for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on the 1st day of June, 2023, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which I understand will send a notice of

electronic filing to all counsel of record.


<u>*/s/ Angeli Murthy*</u>
Angeli Murthy, Esquire