UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 2:22-cv-14345-DMM

LAUREN PEOPLES, for herself and on behalf
of those similarly situated,

    Plaintiff,

vs.

TURTLEFTPIERCE, LLC, a Florida Limited
Liability Company, d/b/a THIRSTY TURTLE
SEAGRILL, PANHANDLERS, INC., a
Florida Profit Corporation, d/b/a THIRSTY
TURTLE SEAGRILL, TURTLE SPORT,
INC., a Florida Profit Corporation, d/b/a
THIRSTY TURTLE SEAGRILL, TURTLE
PARTNERS, LLC, a Florida Limited Liability
Company, d/b/a THIRSTY TURTLE
SEAGRILL.

    Defendants.
_____/

## FINAL APPROVAL ORDER

THIS CAUSE comes before the Court on Plaintiff's Unopposed Motion for Final Approval of Class and Collective Actions Settlement, filed on June 1, 2023. (DE 61). A Final Approval Hearing was held on June 29, 2023. (DE 62). No objections were made to the Settlement Agreement. For the following reasons, the Motion is granted insofar that the Settlement Agreement is approved. However, I reserve ruling on Class counsel's request for attorney's fees.

## BACKGROUND

This case arises out of alleged violations of the Florida Minimum Wage Act and Fair Labor Standards Act by three restaurants (all under the same company) in Palm Beach and St. Lucie Counties. (DE 52 at 2). Plaintiff, a former bartender at one of Defendant's restaurants, initiated

this putative class action on October 4, 2022. The potential class consists of 321 current and former hourly paid bartenders and servers who worked for Defendants between 2017 and 2022. (DE 61 at 7). On January 22, 2023, Plaintiff moved to certify the class. (DE 38).

The Parties then settled on February 3, 2023. (DE 44). On March 17, 2023, I granted Plaintiff's unopposed Motion for Preliminary Approval of Proposed Class and Collective Action Settlement. (DE 57). On April 3, 2023, Plaintiff filed a Motion for Attorney's Fees Approval. (DE 59). And on June 1, 2023, Plaintiff filed the instant Motion. I held a Final Approval Hearing on June 29, 2023.

The Settlement Fund is **$1,719,095.77**. The Settlement Agreement provides that all class members, regardless of whether they opt-in, will receive unpaid overtime hours and liquidated damages not in dispute from December 1, 2020, to December 31, 2022, based on Defendant's records. (DE 61 ay 7). Due to a lack of records, the Parties used a data expert to extrapolate overtime calculations between October 2019 and December 2020. The analysis considered reduced restaurant operations during the pandemic. The Parties dispute whether Defendants paid overtime for hours over 80 in a two-week period. As a compromise, class members will receive 50% of those overtime wages and an equal amount in liquidated damages.

Class members that did submit claim forms will receive unpaid tips under an allocation formula that treats all the claimants the same. The allocation formula is based on the number of weeks and hours worked. (*See id*. at 7-8) (explaining allocation formula). Defendants also formally agree to amend their policies moving forward. Separate from the Settlement Fund, the Parties negotiated a general release agreement between Defendants and Plaintiff Peoples for $7,500.

## DISCUSSION

Before approving a class-action settlement, a district court must primarily do two things (1) certify the class for settlement purposes under Rule 23 and (2) determine that the settlement is "fair, adequate, reasonable, and not the product of collusion." *See Leverso v. SouthTrust Bank of AL., Nat. Assoc.*, 18 F.3d 1527, 1530 (11th Cir. 1994).

### I. Class Certification

The Proposed Class "consists of 321 current and former hourly paid bartenders and servers who worked for Defendants at any time between October 4, 2017, and December 31 2022, except for those who opt out." (DE 61 at 7).

To certify a class for settlement purposes, the court must determine whether Fed. R. Civ. P. 23's four requirements are satisfied: numerosity, commonality, typicality, and adequacy. In addition, one of Rule 23(b)'s prongs must be met. The Proposed Class satisfies those requirements.

First, joinder of all 321 members would be impracticable. Second, there is sufficient commonality among the members' claims given that they all stem out of Defendants' alleged failure to pay overtime and improper tip sharing. Third, Plaintiff Peoples's claims are typical of the class because she is alleging the same damages from the same policy. Fourth, Plaintiff Peoples fairly and adequately protected the interests of the class as evidenced by the favorable settlement. Moreover, Plaintiff Peoples was represented by competent counsel who regularly litigates such cases. (*See* Murthy Aff. ¶ 2-10).

Lastly, Rule 23(b)(3) is satisfied because questions of law and fact common to the class predominate any question affecting individual members and a class action is superior to other available methods of adjudicating this issue. The question at the heart of this case is whether the

employer failed to systematically pay overtime and had managers improperly share in tips under a standard policy. Once that question is resolved in the employees' favor (for settlement purposes), then it is simply a matter of calculating damages per employee. Moreover, there are no other pending disputes related to this matter and this is the proper forum. Given this significant overlap and the generally small sums at issue for each member, it is more efficient and preferable to resolve this matter as a class action.

Accordingly, the Proposed Class is certified for settlement purposes.

## II.     Fairness of Proposed Settlement

To determine if a settlement is fair, adequate, reasonable, and not the product of collusion, courts regularly consider the six *Bennet* factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

Similarly, under Fed. R. Civ. P. 23(e)(2), a court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>     (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

4

I find the Settlement Agreement to be fair, adequate, reasonable, and not the product of collusion. Given that the *Bennet* and Rule 23(e)(2) factors overlap significantly, I consider them together. The maximum Plaintiffs could have recovered was $2,550,000. (DE 61 at 5). Considering the factors as a whole, a settlement over $1.7 million is adequate. In terms of likelihood of success and/or risks of litigation, Defendants have a lot of ammunition to fight Plaintiff's claims. To list a few, there would have been significant litigation over (1) whether the bartenders were actually managers under the law, (2) the applicable statute of limitations, and (3) procedural infirmities as to the Florida state law claims. (*See* DE 61 at 15-16). The Settlement Agreement provides 100% recovery of unpaid wages and 66% of the total recoverable amount even if potential penalties are included. (*Id.* at 17). Defendants are a family-run business with only three locations in the South Florida region, making prolonged and expensive litigation even more risky for Plaintiffs as it decreases their likelihood of collecting a judgment.

The Settlement Agreement has also been well-received. At the fairness hearing, Plaintiff represented that around 36% percent of the class opted in to receive the unpaid tips, and nobody objected. *See Charlotte S. Alexander, Would an Opt in Requirement Fix the Class Action Settlement? Evidence from the Fair Labor Standards Act*, 80 Miss. L.J. 443, 446 (2010) (finding a median opt-in rate of 15% in 57 FLSA class actions in this district). And only two members opted out. (*Id.* at 19). These are key markers that the Settlement Agreement is favored by the Class. The Settlement Agreement was also reached after an arms-length negotiation. Plaintiff initially filed a Motion for Class Certification (DE 38), which brought Defendants to the negotiating table. The Parties mediated the case before a Board-Certified expert in Labor and Employment law. Counsel on both sides is experienced and capable. Plaintiff also received

sufficient discovery (corporate policies, payroll records, and workweek information) and engaged a forensic accounting both prior to and after mediation.

The fees were negotiated apart from the Settlement Fund. At the Fairness Hearing, I pressed Plaintiff's counsel on the award of attorney's fees. I reserve ruling on the issue until Plaintiff's supplemental briefing on the same. However, any forthcoming ruling would not *increase* the amount of fees requested ($566,666.67). And were the Court to cut the fees, that would not affect the claimants' awards under Settlement Agreement because they are based on the allocation formula.

In sum, after reviewing the Settlement Agreement, hearing from the Parties, and considering the applicable standard, I find the Settlement Agreement to be fair, adequate, reasonable, and not the product of collusion.

## CONCLUSION

Accordingly, it is hereby **ORDERED and ADJUDGED** that:

1. Plaintiff's Unopposed Motion for Final Approval of Class and Collective Action Settlement (DE 61) is **GRANTED**.

2. This Action and the preliminarily certified Settlement Class ("All current or former hourly-paid servers or bartenders who worked at Defendants' Juno Beach, Jupiter, or Ft. Pierce locations between October 4, 2017, and December 31, 2022, except for those who opt-out of the Class") are finally approved as an FLSA collective action under 29 U.S.C. § 216(b) and a class action under FED. R. Civ. P. 23(a) and (b)(3) for purposes of settlement only;

3. Dissemination of the Settlement Notice met the requirements of due process;

4. The Settlement Agreement (DE 61-2) is approved, the terms thereof are adjudged to be fair, reasonable, and adequate, and the Parties and Claims Administrator are ordered to consummate the remaining terms and provisions of the Settlement;

5. The payment to Lauren Peoples of $7,500.00 for a general release, separately negotiated from the Settlement Fund, and to be paid in addition thereto, is approved, and shall be sent to the Claims Administrator within fourteen days of this Order;

6. The Settlement Fund shall be distributed in accordance with the terms of the Settlement Agreement (DE 61-2), including that all payments to Participating Class Members and Authorized Claimants shall be sent to the Claims Administrator within fourteen days of this Order;

7. All Settlement Class Members (other than those who filed timely and valid Exclusion Letters) are permanently enjoined from prosecuting against the Released Parties any and all of the Participating Class Members' Released Claims;

8. The Class Representative is permanently enjoined from prosecuting against the Released Parties any and all of the Class Representative's Released Claims;

9. The Action is **DISMISSED WITH PREJUDICE** and in full and final discharge of any and all Participating Class Members' Released Claims; and

10. This Court retains continuing jurisdiction over this Action through December 20, 2023, solely for the purpose of resolving issues related to payment under the terms of this Agreement and resolving attorney's fee issues.

11. The Court **RESERVES** ruling on the Class Counsel's Attorney's Fee award.

12. The Clerk of Court of **SHALL CLOSE THIS CASE.**

**SIGNED** in Chambers at West Palm Beach, Florida, this 13 day of July, 2023.

_____
Donald M. Middlebrooks
United States District Judge

Copies to: Counsel of Record